Lawrence Fodge and A. W. Baumgartner, Trading as Aball Wrecking Company, v. Board of Education of the Village of Oak Park, District 97 et al.
Ceco Steel Products Corporation, Appellant, v. Fidelity and Deposit Company of Maryland, Appellee.

Gen. No. 40,800.

110

Opinion filed March 11, 1941. Rehearing denied March 27, 1941.

POPPENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chicago, for appellant; ANAN RAYMOND and ROBERT Z. HICKMAN and THOMAS E. KIDDOO, both of Chicago, of counsel.

FRANK W. SWETT and WILFRED M. DOHERTY, both of Chicago, for coappellant.

DENT, WEICHELT & HAMPTON, of Chicago, for appellee.

MR. JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This case was consolidated for hearing in this court with Gen. No. 40,870, *Fodge v. Board of Education of Village of Oak Park, Dist. No. 97,* 309 Ill. App. 137 (Abst.), and Gen. No. 40,962, *Fodge v. Board of Education of Village of Oak Park, Dist. No. 97,* 309 Ill. App. 137 (Abst.).

Ceco Steel Products Corporation, cross complainant and appellant, is a subcontractor which was joined as a defendant in a complaint to enforce a mechanic's lien

claim against funds due from the defendant, Board of Education of the Village of Oak Park, Illinois (hereinafter for convenience referred to as the Board of Education), to F. & H. Construction Company, the principal contractor. Ceco Steel Products Corporation filed an answer by which it put the original lien claimant upon proof of his claim. At the same time it filed its cross complaint against the Board of Education, the principal contractor and others and by leave of court joined as a new party defendant to its cross complaint the Fidelity and Deposit Company of Maryland, surety on the bond taken by the Board of Education from the principal contractor.

The cross complaint alleged in substance that F. & H. Construction Company had entered into a contract with the Board of Education to erect an addition to a school building in the Village of Oak Park, Illinois; that said contractor and Fidelity and Deposit Company of Maryland as principal and surety, respectively, entered into a bond conditioned upon the payment by the principal of all persons furnishing material or performing labor for the completion of the building; that cross complainant had fully performed a subcontract, which it had entered into with the principal contractor, and that the surety was liable for an unpaid balance due under the subcontract because said principal contractor had not paid such balance and that, having been adjudicated bankrupt before completing the building, it was unable to pay any part thereof. Certain exhibits, including the bond and subcontract, were attached to and made part of the cross complaint.

The defendant Fidelity and Deposit Company of Maryland, the surety on the bond, filed a motion to dismiss the cross complaint as to it upon the ground principally that the bond furnished by it was merely a performance bond naming the Board of Education as obligee, which could not be sued upon by persons

performing labor for or furnishing material to the principal in the bond, F. & H. Construction Company.

After the motion to dismiss had been allowed an amendment to the cross complaint was filed to show that the action was brought on said cross complaint in the name of the Board of Education "for the use of" the cross complainant. The amendment also added an allegation that the cross complainant (by its former name) had been named in the principal contract as having been approved for employment as a subcontractor. The surety's motion to dismiss was allowed to stand to the amended cross complaint and a final order was entered on the pleadings dismissing the cross complaint as to the surety and entering judgment for costs against the cross complainant. It is from that order that this appeal is taken by the said subcontractor, Ceco Steel Products Corporation. The Board of Education has joined in this appeal as a coparty.

The theory of cross complainant as stated in its brief is that "it is an obligee of the bond executed for the benefit of persons furnishing material or performing labor to the principal. This bond was executed pursuant to the requirements of 'An Act in relation to bonds of contractors entering into contracts for Public Construction,' approved June 20, 1931 (Chap. 29, Sec. [par.] 15, Illinois Revised Statutes 1937 . . . ). The cross complaint alleges the compliance with the statutory procedural steps contained in Section [par.] 16 of the same chapter, which gives to every person 'furnishing material or performing labor, either as an individual or as a subcontractor for any contractor' . . . the right to sue on such bond in the name of the board or political subdivision named as obligee. By amendment to the cross complaint, the Board of Education was added as the 'use' plaintiff. The contract, which is made a part of the bond, contains the direct promise of the principal 'to pay subcontractors,' and

the cross complainant is listed in the contract as one of the subcontractors to be employed. Accordingly, cross complainant contends that it has a cause of action and right to sue in the name of the board under the statute; but that if the bond proper, and the contract which is a part of the bond, do not constitute a compliance with Chapter 29, Section [par.] 15, then that it may recover on the bond and contract as a common law obligation."

Defendant surety's theory is "that the bond upon which cross complainant seeks to recover is simply an ordinary 'performance bond' and is solely for the benefit of and indemnifies only the Board of Education, the obligee named therein, against loss; that there is no allegation in the cross complaint that the Board of Education has sustained a loss or that there has been a breach of the bond; that the cross complainant, Ceco Steel Products Corporation, is neither a named nor a beneficial obligee in the bond and has no right of action thereon; that the bond is not a statutory bond within the provisions of Sections [pars.] 15 and 16, Chapter 29, Illinois Revised Statutes, 1937; that the Statute will not be read into the bond and affords cross complainant no right of action thereon."

The contract entered into between the principal contractor and the Board of Education contained the following, among other provisions:

"ARTICLE IX. Unless otherwise stipulated, the contractor shall provide and pay for all materials, labor, water, tools, equipment, light, power, transportation and other facilities necessary for the execution and completion of the work.

" . . .

"ARTICLE XXXVII. Relations of Contractor and Subcontractor—The Contractor agrees to bind every subcontractor and every subcontractor agrees to be bound by the terms of the Agreement, the General Con-

ditions, the Drawings and Specifications as far as applicable to his work, including the following provisions of this Article unless specifically noted to the contrary in a subcontract approved in writing as adequate by the Owner or Architect.

"...

"The Contractor agrees . . .

"(d) To be bound to the subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof affording remedies and redress to the Contractor from the Owner.

"(e) To pay the Subcontractor, upon the payment of certificates, if issued under the schedule of values described in Article XXIV of the General Conditions, the amount allowed to the Contractor on account of the Subcontractor's work to the extent of the Subcontractor's interest therein.

"(f) To pay the Subcontractor, upon the payment of certificates, if issued otherwise than as in (e), so that at all times his total payments shall be as large in proportion to the value of the work done by him as the total amount certified to the contractor is to the value of the work done by him.

"(g) To pay the Subcontractor to such extent as may be provided by the Contract Documents or the subcontract, if either of these provides for earlier or larger payments than the above.

"(h) To pay the Subcontractor on demand for his work or materials as far as executed and fixed in place, less the retained percentage, at the time the certificate should issue even though the Architect fails to issue it for any cause not the fault of the Subcontractor.

"(i) Pay subcontractor just share of fire insurance."

The bond names only the "Board of Education, School District No. 97, Oak Park, Illinois, hereinafter

called Owner," as obligee, and is conditioned as follows:

"Now, THEREFORE, the condition of this obligation is such that if the Contractor shall faithfully perform said contract on his part, and fully indemnify and save harmless the Owner from all cost and damage which he may suffer by reason of any default, and shall fully reimburse and repay all outlay and expense which the Owner may incur in making good any such default, including reasonable costs and attorney's fees, then this obligation shall be null and void; otherwise it shall remain in full force and effect."

The bond contained a recital that a copy of the contract "is hereto annexed," and a copy of the contract was attached to the bond. Therefore the contract and bond in the instant case constitute a single instrument and must be considered as a single obligation.

We will first consider cross complainant's contention that it has a right of action on the bond as a common-law obligation in that it was a third party beneficiary under the principal contract, which was attached to and made a part of the bond. This contention is fully answered in *Searles v. City of Flora*, 225 Ill. 167, a leading case on the question of the right of a materialman or a subcontractor to recover on a principal contractor's public construction bond. In that case materialmen, as alleged beneficial plaintiffs, brought action on the bond in the name of the City of Flora against the principal contractor and his surety for unpaid material bills. The contract provided that the contractor was ". . . to pay for all materials . . . and labor for said improvement." The bond was conditioned that the principal contractor should ". . . do and perform each and every, all and singular, the matters and things in said contract set forth and specified to be by said principal kept, done and performed . . ." The bond further provided that the contract was ". . . made a part hereof as fully and to the same ex-

tent as if copied at length herein . . ." The contention was made there, as here, that the bond and contract constituted one instrument and that the promise ". . . to pay for all materials . . ." contained in the contract, created an obligation to and enforceable by materialmen under the bond, although the bond itself contained no such condition. In that case, in holding that even though the contract and bond constituted a single obligation and should be considered as a single instrument, still no rights accrued to the materialmen as against the surety on the contractor's bond, the court said at pp. 170, 171 and 172:

"Undoubtedly, in the consideration of this issue the bond and contract must be considered as one instrument, and if the persons or corporations furnishing material for the improvement of said electric light plant are protected or secured under the condition of the bond and contract, then they are entitled to recover. Neither can it be seriously disputed that if a contract is made between two persons upon a valuable consideration, whereby a third person is to be paid money or receive some benefit, such third person may enforce the contract though not named therein. (*Bristow v. Lane,* 21 Ill. 194; *Eddy v. Roberts,* 17 id. 505; *Snell v. Ives,* 85 id. 279.) But to entitle such third person to recover it is necessary that the bond or contract should have been entered into for his benefit, and if it appears from the terms used that the contract or bond was solely for the benefit of the parties thereto, third persons cannot recover under its provisions. The question here must therefore be whether, under the terms used in the bond and contract, considered as a single obligation, the plaintiff below was authorized to bring this suit for the use of other parties who furnished material.

". . . It will be observed that the bond, as well as the contract, runs directly to the city of Flora. There is nothing in any of the terms used in either to indicate that it was intended to apply to or protect third per-

sons. If the bond or contract by its terms had provided that it was given for the benefit of subcontractors or material-men as well as the city of Flora there would be force in the contention of appellee. It is evident, however, that the purpose of its execution was to insure the completion of the work within the contracted period, free from liens of every kind. If the city had been required to pay any claims arising for materials furnished by reason of a lien on the funds in its hands or for any other cause, then the surety company would be required to reimburse and save it harmless. . . .

"We think the evidence in this case clearly shows that the bond and contract were not entered into with the intention of securing third parties as to labor and material furnished in the completion of said contract, but they were entered into for the purpose of securing the city of Flora, and it alone, in this respect."

In *People for use of National Cast Iron Pipe Co. v. Merkle,* 269 Ill. App. 449 (certiorari denied by the Supreme Court), where the action was brought upon a public construction bond similar to that in the case at bar, the bond was conditioned that the principal should "perform each and every of the covenants, conditions and agreements . . ." contained in the contract. The contract required the contractor to furnish a bond for the full amount of the contract, to "provide and pay for all materials, labor . . . ," and to furnish a "bond covering the faithful performance of the contract and the payment of all obligations arising thereunder. . . ." The contract further required the contractor to submit schedules of value ". . . so as to facilitate payment to *subcontractors.* . . ." It gave the owner the right to withhold payments upon "failure of the contractor to make payments properly to *subcontractors* or for *material or labor* . . ." and the right to terminate the contract if the contractor " . . . should fail to make prompt payment to subcontractors or for material or labor. . . ." It will be noted that

there, as in the instant case, that while the bond contained no obligation for the payment of subcontractors, the specifications contained provisions relating to payment by the contractor to subcontractors. In that case, in holding that materialmen obtained no rights under the bond, the court said at p. 458:

"Counsel for appellant have not cited nor has this court been able to find any case where the language of the bond is similar to the one in question, in which the courts have held that a materialman not mentioned in the bond would be able to maintain a suit on a bond for the amount of material he furnished to the contractor who was under bond faithfully to perform his contract.

"We are of the opinion that the language of this bond is such that the appellant could not maintain a suit against the surety company on this bond and the court properly sustained the demurrer to the declaration and the judgment of the circuit court . . . is affirmed."

In *City of Herrin for use of Bradbury v. Stein,* 206 Ill. App. 339, an action was brought by materialmen upon a contractor's bond. The contract contained a provision that the contractors should "duly and promptly pay and discharge all indebtedness that may be incurred by them in carrying out said contract and completing the same, free of all mechanic liens and any indebtedness whatever." There, as here, it was contended that the bond and contract should be construed together and that so construed the materialmen might recover on the bond. In that case, in holding that materialmen could not recover upon the bond, the court said at p. 344:

"Both the bond and contract run directly to the city, and nothing appears by the terms of either to indicate that they were intended for the benefit of third parties. There is no allegation in the declaration that there was any breach of the bond so far as the city was con-

cerned, and under the well-established principles of
law in the consideration of demurrers to pleadings, it
must be taken that there was therefore no breach of
the bond as against the city. Contracts and bonds
very similar to those here under consideration have
been construed by the Supreme Court of this State,
and the rule of construction so established must be
our guide here. In *Searles v. City of Flora, supra,* the
contract provides that the contractor shall 'pay for all
materials,' etc., and the condition of the bond was that
the contractor should 'well and truly keep, do and per-
form each and every, all and singular, the matters and
things in said contract set forth and specified to be by
said principal kept, done and performed, at the time
and in the manner in said contract specified, and shall
pay over, make good and reimburse to the above named
obligee all loss and damage which said obligee may sus-
tain by reason of failure or default on the part of said
principal.' In *City of Sterling v. Wolf,* 163 Ill. 467,
the contractor agreed 'to furnish all labor, materials
and tools necessary to execute the entire work,' and
executed a bond for the faithful performance of his
contract. In *Spaulding Lumber Co. v. Brown,* 171 Ill.
487, the bond requires that the contractor 'shall duly
perform said contract and all the covenants and agree-
ments therein contained, and shall pay and discharge
from said premises all liens for material, labor or
otherwise, which may accrue on account of said build-
ing contract.' In each of these cases the court held
that subcontractors could not recover on the bond,
there being no breach thereof as against the obligee
named therein. A careful reading of the contract and
bond in this case does not disclose any terms or con-
ditions therein evidencing any more intention on the
part of the parties thereto that the same were intended
for the benefit or protection of any persons not parties
thereto, than do the terms and conditions of the con-
tracts and bonds in the above cases. Under these au-

thorities and in the absence of any allegation in the declaration that the city had been required to pay any claims for materials furnished by the beneficial plaintiffs or for any other cause, the declaration as finally amended did not state a cause of action and the demurrer thereto should have been sustained.''

The bond and contract here ran directly to the Board of Education and nothing appears in or about the terms of either to indicate that they were intended for the direct benefit of third parties. Neither the fact that cross complainant (by its former name) was named in the principal contract as an approved subcontractor nor the further fact that the principal contract contained the promise of the contractor to the Board of Education that it would ''pay the subcontractor'' serve to distinguish this case from the foregoing decisions. They were all resolved, as this case must be, in so far as the instant contention is concerned, on the proposition that, regardless of the language used in the respective contracts pertaining to the payment by the contractor for material or labor or to materialmen or subcontractors, such contracts were not made primarily for the direct benefit of the materialmen or subcontractors, but ran to and were intended only for the benefit of the public bodies involved.

To sustain its contention that it has a right of action upon the bond as a common-law obligation cross complainant cites *Board of Education of City of Chicago for use of Chandler Lumber Co. v. Aetna Indemnity Co.,* 159 Ill. App. 319; *Board of Education for use of Weil v. Chicago Bonding & Surety Co.,* 218 Ill. App. 20; *Cherry v. Charles Benson, Inc.,* 264 Ill. App. 199; *Phillips Co. v. Constitution Indemnity Co. of Philadelphia,* 68 F. (2d) 304; *Federal Surety Co. v. City of Staunton, Ill., for use of McWane Cast Iron Pipe Co.,* 29 F. (2d) 9. These five cases are either Illinois cases or Federal cases decided under Illinois law. In *Board*

*of Education of City of Chicago for use of Chandler Lumber Co., v. Aetna Indemnity Co., supra,* the bond itself contained an express provision for the protection of laborers and materialmen, the bond providing that the contractor ''shall promptly make payment to all persons supplying it labor or materials.'' In that case the court said at p. 321:

''To hold the bonds in question valid and binding is only to compel the obligors to do the thing they bound themselves to do. The distinction between these cases and *Spalding Lumber Co. v. Brown,* 171 Ill. 487, and *Searles v. City of Flora,* 225 id. .167, is, that in those cases the bonds contained no condition that the obligors should pay for labor or materials furnished to the contractors, and in these cases the bonds contain such conditions.''

In the other four. cases cited the bonds upon which the respective actions were brought also provided that the principal contractor was liable for the payment of labor and materials. In *Federal Surety Co. v. City of Staunton, Ill., for use of McWane Cast Iron Pipe Co., supra,* which was decided under Illinois law by the United States Circuit Court of Appeals for the Fifth District, the court, quoting from *Board of Education of the City of Chicago for use of Chandler Lumber Co., v. Aetna Indemnity Co.,* said at p. 11:

''The distinction between these cases and *Spalding Lumber Co. v. Brown,* 171 Ill. 487 (49 N. E. 725), and *Searles v. City of Flora,* 225 Ill. 167, (80 N. E. 98), is, that in those cases the bonds contained no condition that the obligors should pay for labor or materials furnished to the contractors, and in these cases the bonds contain such conditions.''

It is conceded that the bond proper in the instant case is not conditioned for the benefit of the subcontractor, but it is insisted that, since the contract contains an express agreement ''to pay the subcontractor'' and since the contract and the bond constitute and must

be considered together as one instrument and obligation, therefore the bond must be construed as containing a direct obligation on the part of the surety to pay the subcontractor. The contract in this case does contain a provision that the principal contractor agrees "to pay the subcontractor" but it must be remembered that there is nothing in the contract that indicates that there was any intention on the part of either the contractor or the Board of Education to execute same primarily for the benefit of the cross complainant. The doctrine that a third party may maintain an action on a promise made by one person to another for his benefit is limited to contracts which have for their primary object and purpose the benefit of a third person and which are made for his direct benefit. *Kenfield Publishing Co. v. Baumgartner*, 189 Ill. App. 413. In our opinion cross complainant does not come within the rule applicable to third party beneficiaries in this State and it has no common-law right as a third party beneficiary to recover on the principal contractor's bond executed by the surety in this case.

It is next contended that since "the bond sued upon was executed pursuant to a statute requiring public bodies to take a bond conditioned for the protection of subcontractors in the situation of the cross complainant, and entirely aside from the question of its character as a common law bond, the surety is liable at the suit of cross-complainant as the person for whose benefit the statute required a bond."

It was unquestionably because there is no right to a mechanic's lien against a public work (*Gunther v. O'Brien Bros. Const. Co.*, 369 Ill. 362) and because it has been repeatedly held by the courts of review of this State that provisions such as are contained in the principal contract in this case, which are relied upon as constituting cross complainant a third party beneficiary, were not effective for that purpose and did not afford a common-law right of action against a surety

upon a public construction performance bond, that the statute was enacted requiring public bodies and officials in making contracts for public work to see that bonds were furnished by the contractors which would protect materialmen and subcontractors.

In 1931 the legislature enacted "AN ACT in relation to bonds of contractors entering into contracts for public construction" (pars. 15 and 16, secs. 1 and 2, ch. 29, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 136.320, 136.321]), which provides:

"Sec. 1. All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to execute a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties, and in an amount to be fixed by said officials, boards, commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the payment of material, used in such work and for all labor performed in such work, whether by subcontractor or otherwise.

"Sec. 2. Every person furnishing material or performing labor, either as an individual or as a subcontractor for any contractor, with the State, or a political subdivision thereof where bond shall be executed as provided in this Act, shall have the right to sue on such bond in the name of the State, or the political subdivision thereof entering into such contract, as the case may be, for his use and benefit. . . ."

This statute was in force when the contract and bond involved herein were executed.

The foregoing statute declared the public policy of this State in the matter of the protection of those furnishing material or labor in the construction of public work under bonds thereafter given for the perform-

ance of such work. The statute contains the mandatory provision that public bodies or officials in making contracts for public work "shall require every contractor for such work to execute a bond" affording protection to all those who furnished "material used in such contract" or "labor performed in such work." Not only was the Board of Education chargeable with knowledge of the provisions of this statute but so were the principal contractor and the surety and as a subcontractor cross complainant had the right to assume that the requirements of the statute would be complied with when the bond was executed by the surety herein. We think it necessarily follows that the bond must be construed in the light of the statute. In view of the fact that the bond contained the recital that a copy of the contract "is hereto annexed" and a copy of the contract was actually attached to the bond, we have heretofore held that the contract and bond constituted a single instrument and therefore must be considered as a single obligation. That being so the conditions of the contract are conditions of the bond to the same extent as if they had been incorporated in terms in the bond proper.

It has been shown that the principal contract contained repeated promises and agreements on the part of the contractor to pay the subcontractor. While in considering the previous contention we were compelled to hold under the rule established by decisions of the Supreme and Appellate Courts of this State that the promise of the contractor to pay the subcontractor was primarily for the benefit of the Board of Education and that therefore no common-law right of action against the surety on the bond inured to cross complainant as a third party beneficiary, in the light of the statute, which was intended for the benefit and protection of subcontractors situated as is the cross complainant, and in view of the fact that the contract, which is a part of the bond, contains a definite promise

to pay the subcontractors, we are impelled to hold that the payment of the claims of subcontractors is within the guaranty of the bond.

It is fair to assume that the defendant surety was familiar with the purpose and provisions of the statute which had been in existence for 6 years when the bond in this case was executed. The contract gave the owner the right to require a bond covering "the payment of all obligations arising thereunder." The contract was conditioned and therefore the bond, of which the contract was an integral part, was conditioned for the payment of the subcontractors. Under these circumstances we think that it cannot be said that the surety did not undertake by its bond to guaranty the obligation of the contractor to pay the subcontractors.

The defendant surety insists that the bond in this case contains no such provision as the statute prescribes for the protection of subcontractors furnishing labor and material to contractors for public works; that, while the contemporaneous contract contains a provision for the payment of subcontractors, it cannot be imported from the contract into the bond; and that whether the omission from the bond of the provision for the payment of subcontractors was the result of accident or design or misunderstanding of the law, the limit of the liability of a surety is that to which it has actually obligated itself and it cannot be held beyond the strict letter of its bond.

In passing upon a somewhat similar contention in *Peake v. United States,* 16 App. D. C. 415, where a contract and bond for construction of a public work were presented for interpretation in the light of a Federal statute (title 40, sec. 270, U. S. Code of Laws) practically identical in its provisions with the statute of this State heretofore set forth, the court said at pp. 419, 421, 422:

". . . But the plain answer to this argument is that the provision required by the statute for the pro-

tection of laborers and materialmen subordinate to contractors for public works is contained in the bond in controversy, and is fully and completely contained therein, and it is unnecessary to go outside of the letter of the bond to find it.

"The bond embraces the contract; the latter is in express terms made an integral part of the bond. The sole obligation of the paper called the bond, as distinguished from the contract, is that the contractors shall perform 'all and singular the covenants, conditions and agreements of the contract,' and there is no other obligation of any kind in it. In fact, it is meaningless except as incorporating the contract into it, which it sufficiently does by its reference to it. Plainly, therefore, the contract is as much a part of the bond as though it had been copied *verbatim* into it; and when the bond sufficiently indicates the covenants which it intends to secure, we know of no dictate of reason or rule of law that would require their repetition in the bond.

". . . The obligation, which the appellants, both principal and sureties, distinctly assumed by their bond was to perform all and singular the covenants, conditions and agreements of the contract. They were bound to take notice of every covenant, condition and agreement of the contract, ordinary and extraordinary. The fundamental principles of law and fair dealing require that they should not be permitted to execute solemn obligations like this, and then say that they did not know what the obligation contained. It was their duty to know. It was their duty to read the contract, of all and every covenant of which they guaranteed the faithful performance; and we must assume in the present case that they did read it; for the record shows nothing to the contrary.

"We do not deem it necessary to review the numerous authorities cited by the appellants. We do not regard any of them as applicable to the case before us. For this case is not one in which we are called upon

to determine whether a strict or liberal construction is to be applied in the interpretation of a bond. The simple question is, whether the bond in controversy contains certain words, the sufficiency of which is not contested if they are found in the bond. We hold that they are found in the bond because they are found in the contract which accompanies the bond, and which is made an integral part of it. The utmost that can reasonably be said, if that much, is that they are written in the wrong place. But that they are written in the instrument clearly and distinctly, and without possibility of being mistaken or misunderstood, we have no doubt.''

The language used in the foregoing decision is particularly appropriate and applicable to the situation presented in the case at bar. So here we have a case where not only by fair intendment were the rights and interests of the subcontractors being provided for as required by statute and as shown by the terms of the contractor's agreement, but also one where the terms of this agreement were expressly made a part of the bond itself. (*Maryland Casualty Co. v. Fowler*, 31 F. (2d) 881.)

In the view we take of this case we feel that it would serve no useful purpose to discuss the numerous authorities cited by the parties.

The cross complainant admittedly complied with the procedural steps required by section 2 of the act under consideration.

In our opinion the cross complaint stated a good cause of action under the statute against the defendant surety on its bond and the trial court erred in striking same.

The motion of the Board of Education heretofore made and reserved to hearing, to dismiss its joint appeal without costs, is at this time allowed.

For the reasons stated herein the judgment of the circuit court is reversed as is the order striking the cross complaint, as amended, of Ceco Steel Products

Corporation on motion of the defendant surety, and the cause is remanded with directions that the defendant surety be required to answer said cross complaint, as amended, and that such further proceedings be had as are not inconsistent with the views herein expressed.

*Judgment reversed and cause remanded with directions.*

FRIEND, P. J., and SCANLAN, J., concur.