EMULSICOAT, INC., Plaintiff-Appellant, *v.* THE CITY OF HOOPESTON *et al.*, Defendants-Appellees.

Fourth District   No. 16962

Opinion filed September 3, 1981.—Rehearing denied October 8, 1981.

Rex L. Reu, of Reno, O'Byrne & Kepley, of Champaign, for appellant.

Richard J. Doyle, of Doyle & Howell, of Danville, for appellees City of Hoopeston and Kenneth Collins.

William A. Young, of Young, Welsch, Young & Hall, of Danville, for appellees Village of Rossville and Joyce Redden.

Mr. JUSTICE WEBBER delivered the opinion of the court:

This appeal presents questions of statutory construction relating to portions of "An Act in relation to bonds of contractors entering into contracts for public construction" (Ill. Rev. Stat. 1979, ch. 29, pars. 15, 16) (Bond Act), and to portions of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 1—101 *et seq.*) (Immunity Act).

Defendants City of Hoopeston and Village of Rossville entered into contracts for public improvements with Tom's Equipment Company. Plaintiff was a subcontractor of Tom's Equipment and furnished materials for the jobs. It was alleged that defendant Kenneth Collins was comptroller of the City of Hoopeston and had general control over all municipal officers. A similar allegation concerning defendant Joyce Redden was that she was the village clerk of Rossville and had general control over the other municipal officers.

Further allegations in plaintiff's complaint were that Tom's Equipment had failed to pay plaintiff for the materials furnished by it, even though that claim had been reduced to judgment in another proceeding; that the defendants had failed, or neglected, to obtain the contractor's bond required by section 1 of the Bond Act (Ill. Rev. Stat. 1979, ch. 29,

par. 15); that plaintiff had served proper notice as required by section 2 of the Bond Act (Ill. Rev. Stat. 1979, ch. 29, par. 16) but that all funds had been paid out prior to that time; and that plaintiff had been damaged to the extent of its unpaid claim.

It can thus be seen that plaintiff's complaint sounds in ordinary negligence, and so far as we can determine, presents a question of first impression under the Bond Act.

The circuit court of Vermilion County, after briefing and argument by the parties, entered separate orders of dismissal as to all defendants. The court indicated that it was basing its order on the wording of the Bond Act itself and the analogy found in *Gunther v. O'Brien Brothers Construction Co.* (1938), 369 Ill. 362, 16 N.E.2d 890.

We affirm.

■■ Since the bases of our decision depend on different statutes and different theories, we will discuss the claim versus the municipalities and the claim versus their respective officers separately; first, as to the municipalities. Section 1 of the Bond Act provides:

"All officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof shall require every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with good and sufficient sureties. The amount of such bond shall be fixed by such officials, boards, commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in such work and for all labor performed in such work, whether by subcontractor or otherwise." Ill. Rev. Stat. 1979, ch. 29, par. 15.

Section 2 of the Bond Act provides:

"Every person furnishing material or performing labor, either as an individual or as a sub-contractor for any contractor, with the State, or a political subdivision thereof where bond shall be executed as provided in this Act, shall have the right to sue on such bond in the name of the State, or the political subdivision thereof entering into such contract, as the case may be, for his use and benefit, and in such suit the plaintiff shall file a copy of such bond, certified by the party or parties in whose charge such bond shall be, which copy shall, unless execution thereof be denied under oath, be prima facie evidence of the execution and delivery of the original; provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof

entering into such contract, as the case may be, liable to such sub-contractor, materialman or laborer to any greater extent than it was liable under the law as it stood before the adoption of this Act." Ill. Rev. Stat. 1979, ch. 29, par. 16.

The critical language is the proviso in section 2: "* * * provided, however, that this Act shall not be taken to in any way make the State, or the political subdivision thereof entering into such contract, as the case may be, liable to such subcontractor, materialman or laborer to any greater extent than it was liable under the law as it stood before the adoption of this Act." The Act was adopted in 1931.

Plaintiff places a narrow construction on the proviso, arguing that it relates only to the language immediately preceding it, which deals with the right of the contractor to bring a suit in the name of the municipality, that it limits recovery to the extent of the bond and thus becomes operative only when there is a bond. Therefore, he deduces, there is no limit on liability when there is no bond. We cannot agree.

If the municipality did obtain a bond, there could be no liability on it for failure to do so, and section 1 of the Act requires a sufficient bond for completion of the work. It therefore follows that the proviso must be to limit whatever liability might arise from failure to require the bond. The proviso states that the "* * * Act shall not be taken to *in any way* make * * * the political subdivision * * * liable * * * to any greater extent * * *." (Emphasis added.) By its own terms it is not limited to the presence of a bond.

In our judgment, the proviso represents a very cautious approach by the legislature to the question of tort immunity of municipalities. This had existed from the time of *Town of Waltham v. Kemper* (1870), 55 Ill. 346, some 60 years before the passage of the Bond Act, and continued until *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, almost 30 years after the Bond Act was passed. It seems clear to us that by adding a new remedy for unpaid contractors the legislature was taking meticulous care to see that the traditional immunity was not infringed in 1931, or thereafter.

Plaintiff further argues that *Molitor* abrogated municipal immunity and that various sections of the Immunity Act must be considered. Again, we disagree, and insofar as the municipalities are concerned, we find the Immunity Act irrelevant.

■■ The Immunity Act is a general statute dealing with many general potential liabilities; the Bond Act is a specific statute dealing with a specific liability. It is a cardinal rule of statutory construction that a specific statute will control over a general one. (2A Sutherland, Statutory Construction §§51.01, 51.05 (3d ed. 1973).) The Immunity Act was passed in 1965, and although a variety of other statutes were repealed by it (Ill. Rev.

Stat. 1967, ch. 83, par. 10—101), the Bond Act was left untouched. We are therefore persuaded that the legislature intended that the immunity there be left intact.

As previously indicated, the trial court relied to some extent on *Gunther*. In that case the supreme court, by way of dictum, stated:

> "It is generally held that a municipality is not liable, because of such omission [failure to obtain a bond], to laborers or material-men for work done or materials furnished. (64 A.L.R. 678.)" (369 Ill. 362, 370, 16 N.E.2d 890, 893.)

However, we find *Gunther* irrelevant. The court was dealing with a case under section 23 of the mechanics' lien act (Ill. Rev. Stat. 1937, ch. 82, par. 23) and its relation to section 11 of the sanitary district act (Ill. Rev. Stat. 1937, ch. 42, par. 310) and section 91 of the Local Improvement Act (Ill. Rev. Stat. 1937, ch. 24, par. 800). All of these are very specialized statutes and are of little assistance in interpreting other likewise specialized laws, such as the Bond Act.

The trial court was correct in dismissing the City of Hoopeston and the Village of Rossville.

We turn next to the question of immunity for Collins and Redden, the employees of the municipalities. In dismissing them the trial court stated that it was for the same reasons as it assigned in dismissing the munici-palities. Those reasons are inapplicable. The proviso in the Bond Act applies only to political subdivisions, not their employees. The same is true of *Gunther* and the A.L.R. annotation cited therein. The solution as regards the employees must be found elsewhere, and we believe that it is in sections 2—202 and 2—205 of the Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202 and 2—205).

It should be clear at the outset that we are concerned here with a mandatory duty on the part of the employees, as distinguished from a discretionary duty. At common law an employee enjoyed immunity when acting in a discretionary capacity. (*People ex rel. Munson v. Bartels* (1891), 138 Ill. 322, 27 N.E. 1091.) This concept was codified in section 2—201 of the Immunity Act. (Ill. Rev. Stat. 1979, ch. 85, par. 2—201.) The same was not true of a mandatory function. The officer was liable when he failed to perform such a duty or was negligent in the performance of it. (*Bartels*.) However, this common law liability was circumscribed by the remaining sections of part 2 of article II of the Immunity Act (Ill. Rev. Stat. 1979, ch. 85, pars. 2—202 through 2—212.) If Collins and Redden are to be found immune, that immunity must exist in one or more of these sections.

Two of them are applicable, since these two refer to the enforcement of a law, the factual setting of the instant case. Those sections are as follows:

Section 2—202 which is read:

"A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton negligence." Ill. Rev. Stat. 1979, ch. 85, par. 2—202.

Section 2—205 which is read:

"A public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment, or by his failure to enforce any law." Ill. Rev. Stat. 1979, ch. 85, par. 2—205.

A superficial reading of these two sections leads to a question as to whether they are irreconcilable; *i.e.*, section 2—202 requires wilful and wanton negligence, while section 2—205 does not, in the enforcement of any law. We have been unable to find any authorities which directly discussed this apparent inconsistency. Several cases have dealt with the sections separately. In *Arnolt v. City of Highland Park* (1972), 52 Ill. 2d 27, 282 N.E.2d 144, the supreme court was concerned with section 2—202 only, holding that it was possible to plead a case of ordinary negligence under it. It remanded with directions to allow the plaintiff to amend her complaint. The decision does not indicate what result might ensue if section 2—205 were brought into play on remand. In *O'Fallon Development Co. v. City of O'Fallon* (1976), 43 Ill. App. 3d 348, 356 N.E.2d 1293, the appellate court, without reference to section 2—202, held that section 2—205 absolved public employees from liability on account of a failure to enforce statutory and constitutional provisions prohibiting purely private use of public property. In *Mahoney Grease Service, Inc. v. City of Joliet* (1980), 85 Ill. App. 3d 578, 406 N.E.2d 911, the appellate court, without discussion, upheld the dismissal of a count alleging wilful and wanton negligence. The court used section 2—205 as its reason, although wilful and wanton appears in section 2—202 only.

From this brief sampling of other opinions, it is apparent that there has been a considerable admixture of thought on the subject.

Defendants urge us to extend the doctrine of *Melbourne Corp. v. City of Chicago* (1979), 76 Ill. App. 3d 595, 394 N.E.2d 1291, to all sections of part 2 of article II of the Immunity Act. They argue that the Act makes no distinction between discretionary and mandatory functions. We disagree. *Melbourne* was concerned solely with section 2—201 of the Act. The court stated that that section codified the common law, citing *Bartels*, but offered no opinion as to mandatory duties. We have already indicated our opinion that section 2—201 creates a blanket immunity for all discretionary acts, and that the remaining sections 2—202 through 2—212 deal with mandatory acts. The presence of the word "discretion" in section 2—201, and its absence in the remaining sections, triggers the familiar maxim of construction that the inclusion of one is the exclusion of all else.

We observe a significant difference in language between section 2—202 and the other sections in part 2 of article II of the Immunity Act. Section 2—202 states that an employee is "not liable for his act." All other sections, except section 2—212, refer to an *"injury."* (Emphasis added.) The words in connection with "injury" are varied slightly to conform to the syntax, but the central idea in each of the other sections is "injury caused by" various actions. We cannot assume that such a difference is the result of legislative oversight or of an error in draftsmanship, especially since the sections have remained the same since their enactment in 1965. We are therefore led to the conclusion that section 2—202 is directed at something other than what is protected by section 2—205.

In *Arnolt*, decided under section 2—202, the action was primary, *i.e.*, the act of the policeman himself. In *O'Fallon Development Co.* and *Mahoney Grease Service, Inc.*, and other cases decided under section 2—205, the action was secondary, *i.e.*, the acts of other employees or agents.

Under this rationale, the on-duty policeman who failed to enforce a posted speed limit would not be liable for an accident caused thereby, unless his actions were wilful and wanton, under section 2—202; the police chief who failed to instruct the patrolman to enforce the limit would not be liable under section 2—205. The "act" of the policeman, if wilful and wanton, is actionable and there is no immunity; the "injury caused by" the failure of the police chief is not actionable.

■■ We therefore conclude that section 2—202 is aimed at the direct action of the employee, while section 2—205 is aimed at the decisional action of others. Under this reasoning, Collins and Redden had immunity under either section 2—202 or 2—205. The pleadings are insufficient to show whether the failure to require bond was their direct action, or their decision. If it were direct, there is no allegation of wilful and wanton conduct and hence immunity exists under section 2—202. If it were their decision to be carried out by others, immunity exists under section 2—205.

Even though we believe that the immunity of Hoopeston and Rossville rests principally upon our interpretation of the proviso in the Bond Act, we note in passing that the Immunity Act provides: "A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable." (Ill. Rev. Stat. 1979, ch. 85, par. 2—109.) If, as we have held, Collins and Redden are not liable, neither are Hoopeston and Rossville.

The order of the circuit court of Vermilion County is affirmed.

Affirmed.

TRAPP, P. J., and LONDRIGAN, J., concur.