**WESTERN WATERPROOFING COM-PANY, INC., Mid-Continental Restoration Company, Inc., Plaintiffs,**

**v.**

**SPRINGFIELD HOUSING AUTHORITY, Defendant.**

No. 86–3144.

United States District Court,
C.D. Illinois,
Springfield Division.

Sept. 22, 1987.

Gary L. Cline, Springfield, Ill., for plaintiffs.

Donald A. LoBue, Springfield, Ill., for defendant.

## OPINION ORDER

MILLS, District Judge:

As far as the Court and the parties can discern, this case presents a novel issue under Illinois law.

The ultimate issue: Whether a third party beneficiary contract action may be asserted by an unpaid subcontractor against a public entity where such entity has failed to procure from a general contractor a payment bond as required by the Illinois Bond Act.

The case is before this Court on cross motions for summary judgment. Under Count III of their complaint, Plaintiff Western Waterproofing Company, Inc., prays for judgment in the amount of $129,000. Under Count VI of their complaint, Mid-Continental Restoration Company, Inc., prays for judgment in the amount of $22,456. Defendant Springfield Housing Authority prays for judgment dismissing Counts III and VI of Plaintiffs' complaint.

Summary judgment will be granted where there is no genuine issue as to any material fact and the movant is entitled to a judgment as a matter of law. Fed.R. Civ.P. 56(c).

The pertinent facts of this suit are undisputed. Plaintiffs were subcontractors for a federally funded construction project of the Defendant, Springfield Housing Authority (SHA). In January 1985, the SHA entered into an agreement with Bildoc, Inc. (Bildoc), for the waterproofing and weatherization of five hi-rise apartment buildings. The general contractor, Bildoc, then entered into contracts with various subcontractors which included Plaintiffs Western Waterproofing Company, Inc. (Western) and Mid-Continental Restoration Company, Inc. (Mid-Continental). Both Plaintiffs contributed labor and materials toward the completion of the project. Both were to receive payment 63 days from completion of the project. Work was completed and final payment, less retainage in the amount of $12,481.16, was made to Bildoc on December 13, 1985.

Western was to be paid $129,000 under its agreement with Bildoc. Mid-Continental was to be paid $22,456 under its agreement with Bildoc. Neither Plaintiff has received any payments for work performed.

Plaintiffs filed their complaint on May 2, 1986. They secured a default judgment against Defendant Bildoc based on Counts I and IV of the complaint in a judgment order entered July 11, 1986. The Plaintiffs have been unable to collect on this judgment. Plaintiffs then resumed proceedings in this case in February 1987 against the SHA. Plaintiffs confessed SHA's motion to strike Counts II and V of the complaint. Thus, Counts III and VI of the complaint, which allege that the Plaintiffs are third party beneficiaries of SHA's contract with Bildoc, remain unlitigated and are the subject of the cross motions for summary judgment.

### I.

The basis of the Plaintiffs' claim as a third party beneficiary of the contract between SHA and Bildoc stems from the following provision in the general contract:

### PERFORMANCE AND PAYMENT BOND

A performance bond in the amount of total amount of contract for cost of installation of windows will be furnished to the authority as a separate cost item and will be added to the contract price. After the first shipment of windows and payment thereof by SHA, the Contractor

shall provide SHA with a Waiver of Lien against all materials on site.

*The SHA failed to procure from Bildoc either a performance bond or a payment bond.* Both parties agree that had a payment bond been secured the Plaintiffs, as subcontractors, would have collected monies due them under such bond. The parties further agree that subcontractors have no rights under a performance bond. Thus, the initial bone of contention is, what exactly was required under the contract. If only a performance bond was required, as stated in the body of the provision, then Western and Mid-Continental as subcontractors have no claim. If, however, a payment bond was also required as stated in the heading of the provision, then Plaintiffs have stated a colorable claim.

The nature of the bonds involved is as follows. Generally, as a condition of the construction contract between an owner (SHA) and a general contractor (Bildoc), the owner requires the contractor to obtain a surety bond. "There are two kinds of surety bonds, performance bonds and payment bonds. A performance bond simply insures that the contractor will perform the work as contracted.... A payment bond, on the other hand, requires that the contractor pay all subcontractors and materialmen before the owner will make final payment." *Taylor Woodrow Blitman Const. Corp. v. Southfield Gardens Co.,* 534 F.Supp. 340, 344 (D.Mass.1982) (footnotes omitted); *see also* J. Calamari & J. Perillo, The Law of Contracts 621 (2d ed. 1977). Thus, although the two bonds can be combined into a single bond, they serve separate and distinct purposes. J. Calamari & J. Perillo, *supra.*

■ It is the SHA's contention that although the above quoted "section is entitled Performance and Payment Bond, it requires only a Performance Bond. There is nothing that requires Bildoc to supply a Payment Bond under the contract." The Court disagrees with this interpretation for two reasons. First, under 29 Ill.Rev.Stat.

¶ 15 (1985), An Act in Relation to Bonds of Contractors Entering into Contracts for Public Construction (Bond Act),

all officials, boards, commissions or agents of this State, or of any political subdivision thereof in making contracts for public work of any kind to be performed for the State, or a political subdivision thereof *shall require* every contractor for such work to furnish, supply and deliver a bond to the State, or to the political subdivision thereof entering into such contract, as the case may be, with ·good and sufficient sureties. The amount of such bond shall be fixed by such officials, boards, commissions, commissioners or agents, and such bond, among other conditions, shall be conditioned for the completion of the contract, for the payment of material used in such work and for all labor performed in such work, *whether by subcontractor or otherwise.*

*Id.* (emphasis added).[1] The Act contains mandatory language directing the requirement of a payment bond to protect materialmen and subcontractors. *Fodge v. Board of Educ. of the Village of Oak Park, Dist. 97,* 309 Ill.App. 109, 124, 32 N.E.2d 650 (1941).

■ Under Illinois law, "statutory provisions applicable to a contract ... are deemed to form a part of that contract and must be construed in connection therewith." *DC Electronics, Inc. v. Employers Modern Life Co.,* 90 Ill.App.3d 342, 348, 45 Ill.Dec. 690, 413 N.E.2d 23 (1st Dist.1980); *see also Local 165, Int'l Bhd. of Elec. Workers v. Bradley,* 149 Ill.App.3d 193, 102 Ill.Dec. 20, 32, 499 N.E.2d 577, 589 (1st Dist.1986) (involving union contract); *Lehmann v. Arnold,* 137 Ill.App.3d 412, 422, 91 Ill.Dec. 914, 484 N.E.2d 473 (4th Dist. 1985) (involving mortgage contract); *Weisberg v. Royal Ins. Co. of Am.,* 124 Ill. App.3d 864, 868, 80 Ill.Dec. 187, 464 N.E.2d 1170 (1st Dist.1984) (involving insurance contract); *National Fidelity Life Ins. Co. v. Karaganis,* 811 F.2d 357, 362 (7th Cir.

---

**1.** It has been held that a housing authority is a political subdivision and therefore subject to the provisions of the Bond Act. *Housing Authority of Franklin, Illinois ex rel. Smith-Alsop Paint & Varnish Co. v. Holtzman,* 120 Ill.App.2d 226, 241, 256 N.E.2d 873 (5th Dist.1970).

1987) (involving insurance contract). Further, it has been held in Illinois that the "Mechanics' Liens Act becomes a part of every construction contract between an owner and contractor for the erection or improvements of a building." *Deerfield Elec. Co. v. Herbert W. Jaeger & Assocs., Inc.*, 74 Ill.App.3d 380, 384, 30 Ill.Dec. 149, 392 N.E.2d 914 (2d Dist.1979). Similarly, this same rule should apply to the Bond Act where a contract for public work is involved as it has been held that "paragraphs 15 and 16 (of Chapter 29) are remedial and were intended to protect subcontractors and materialmen for whom no right of mechanic's lien exists against a public work." *Board of Educ., ex rel. Palumbo v. Pacific Nat'l Fire Ins. Co.*, 19 Ill.App.2d 290, 299, 153 N.E.2d 498 (1st Dist.1958). Thus, because the mechanic's lien was inapplicable under this public works contract, and because the Bond Act was established to achieve the same remedial goal as the mechanic's lien in a public works situation, it follows that the Bond Act should be read into the public works contract between SHA and Bildoc, requiring the procurement of a payment bond as required by the Bond Act.

█ The second reason a payment bond and not simply a performance bond is held to be required under the contract is that ambiguous contractual language is to be construed against the drafter of the language. *Duldulao v. St. Mary of Nazareth Hosp. Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987). The contract was apparently drawn by the SHA and would therefore be construed against it. Under this rule, again, a payment bond would be required under the contract. Additionally, it should be noted that, the contract language nothwithstanding, the Executive Director of SHA stated in his deposition that: "It is our policy there should be a performance and payment bond. So—I am not sure how to phrase this. Our directors just didn't follow their responsibilities and duties here in regard to that [getting a performance and payment bond from Bildoc]."

## II.

█ Having established that a payment and performance bond was necessary under the contract, the Court must now decide whether Plaintiffs are third party beneficiaries under the contract and are, therefore, able to assert the bond provision. The Court determines that they are.

There is no question that had a payment bond been procured Plaintiffs would have been third party beneficiaries under it. The question arises here, however, whether Plaintiffs are third party beneficiaries under the contract provision to procure a bond where none has been procured. The answer in Illinois appears to be that they are.

█ The general rule with respect to third party beneficiary actions in Illinois is well settled. If the contract is entered into for a direct benefit of a third person, not party to the contract, such third person may sue for breach thereof. The test is whether the benefit to the third person is direct or incidental. If direct, he may sue on the contract; if incidental, there is no right of recovery. *Carson Pirie Scott & Co. v. Parrett*, 346 Ill. 252, 257, 178 N.E. 498 (1931).

In *Town & Country Bank of Springfield v. James M. Canfield Contracting Co.*, 55 Ill.App.3d 91, 12 Ill.Dec. 826, 370 N.E.2d 630 (4th Dist.1977), the Appellate Court of Illinois held that a subcontractor of a subcontractor was a third party beneficiary of a construction subcontract. The court based its decision on *Avco Delta Corp. Canada Ltd. v. United States*, 484 F.2d 692 (7th Cir.1973), *cert. denied, sub nom. Canadian Parkhill Pipe Stringing, Ltd. v. United States*, 415 U.S. 931, 94 S.Ct. 1444, 39 L.Ed.2d 490 (1974). The *Avco* court determined that the subcontractors were third party beneficiaries under a provision in a construction contract providing for retainage by the owner until the general contractor provided to the owner an affidavit stating that all the general contractor's bills were paid. It is only logical, then, that a subcontractor would also be a third party beneficiary of a contract provision to procure a payment bond since

a payment bond is, by definition, for the protection of subcontractors. *See* Ill.Rev. Stat. ch. 29, ¶ 15 (1985). In fact, the Seventh Circuit stated in *Avco:*

> A materialman may be a third party beneficiary of a promise by a general contractor to obtain a surety bond for the prompt payment of all laborers and materialmen, and, in the context of a government contract, an unpaid materialman of a subcontractor was allowed to sue the general contractor who had failed to provide such a bond as he had covenanted in the construction contract.

*Avco,* 484 F.2d at 702 (*citing Strong v. American Fence Constr. Co.,* 245 N.Y. 48, 156 N.E. 92, 94 (1927) (opinion by Cardozo, C.J.)). Thus, this Court holds that Plaintiffs are third party beneficiaries under the SHA-Bildoc contract.

### III.

█ Defendant, SHA, argues that even if a payment bond was required and even if Plaintiffs are third party beneficiaries under the general contract, SHA is immune from liability under the Illinois Bond Act.[2] Defendant cites two cases in support of this proposition. *Emulsicoat, Inc. v. City of Hoopeston,* 99 Ill.App.3d 835, 55 Ill.Dec. 176, 425 N.E.2d 1349 (4th Dist.1981), and *Arvanis v. Noslo Eng'g Consultants, Inc.,* 739 F.2d 1287 (7th Cir.1984), *cert. denied,* 469 U.S. 1191, 105 S.Ct. 964, 83 L.Ed.2d 969 (1985). Neither case is applicable to the present action.

Both *Emulsicoat* and *Noslo* present fact situations similar to that of the instant case—an unpaid subcontractor brought an action against the government which failed to secure a payment bond from the general contractor. However, each case was brought on a negligence theory—not in contract. The *Emulsicoat* court held that although the Bond Act provided a remedy for unpaid subcontractors "the legislature [took] meticulous care to see that the traditional immunity was not infringed...." *Emulsicoat,* 99 Ill.App.3d at 838, 55 Ill. Dec. 176, 425 N.E.2d 1349. Thus, tort immunity not being waived under the Act, the Court refused to allow the action. In *Noslo,* the Seventh Circuit reached the same result in a negligence action under the Miller Act (to a large degree the federal equivalent of the Illinois Bond Act). 40 U.S.C. §§ 270a–270d (1982). The Court simply stated: "There is clearly no waiver of sovereign immunity here." *Noslo,* 739 F.2d at 1290.

A further reason for refusing Defendant protection under the Bond Act can be found in the legislative intent in enacting the act.

> It was unquestionably because there is no right to a mechanic's lien against a public work and because it has been repeatedly held by the courts of review of this State that provisions such as are contained in the principal contract in this case, which are relied upon as constituting cross complainant a third party beneficiary, were not effective for that purpose and did not afford a commonlaw right of action against a surety upon a public construction performance bond, that the statute [Bond Act] was enacted requiring public bodies and officials in making contracts for public work to see that bonds were furnished by the contractors which would protect materialmen and subcontractors.

*Fodge,* 309 Ill.App. at 122–23, 32 N.E.2d 650 (citation omitted). In light of the legislative intent in enacting the Bond Act, it is simply unjust to allow SHA to avoid liability by claiming immunity under the very act which it ignored in the first place, thus giving rise to this dispute. Though Defendant is correct that it is not subject to tort liability, SHA further contends that it is immune from a third party beneficiary contract action. This contention has no merit. *See Metro East Sanitary Dist. v. Village of Sauget,* 131 Ill.App.3d 653, 86 Ill.Dec. 760, 475 N.E.2d 1327 (5th Dist. 1985).

---

**2.** Defendant also asserted immunity under the Tort Immunity Act of Illinois. This is clearly wrong. Ill.Rev.Stat. ch. 85, ¶ 2–101 (1985) states: "Nothing in this act affects the liability, if any, of a local public entity or public employee, based on: (a) Contract...."

### IV.

Defendant raises two additional arguments. First, Defendant asserts that Plaintiffs have waived any redress against SHA in its subcontract under a provision in which the subcontractor agreed that "no mechanic's liens or claims will be filed or maintained against the project or premises...." The Court does not read this waiver to include a third party beneficiary contract action against the owner who was not party to the subcontract.

Second, Defendant argues that Plaintiffs are estopped from making a claim against SHA. Defendant argues that the estoppel arises from conversations between representatives of Plaintiffs' companies and the Executive Director of the SHA wherein the representatives urged the Director to make prompt payments to Bildoc such that Bildoc could pay Plaintiffs. Citing *Stewart v. O'Bryan*, 50 Ill.App.3d 108, 8 Ill.Dec. 633, 365 N.E.2d 1019 (4th Dist.1977), Defendant states: "The principal elements of an action in estoppel are that there were representations acted upon by an opposing party which results in a prejudice." This simply misstates the law as enunciated in *Stewart*. Not "representations," but "a misrepresentation or concealment of material facts" is necessary for an estoppel to arise. *Stewart*, 50 Ill. App.3d at 110, 8 Ill.Dec. 633, 365 N.E.2d 1019. As there is no allegation of a misrepresentation or concealment of material facts, this argument must fail.

*Ergo,* for the reasons given above, the Court ALLOWS Plaintiffs' motion for summary judgment. As this Court is presently holding the retainage funds, in the amount of $12,480.82, from the SHA-Bildoc contract, such funds are hereby ordered released to Plaintiffs in the following amounts: Western Waterproofing—$10,-608.70; Mid-Continental Restoration Co.—$1,872.12. The retainage funds are divided in this manner pursuant to agreement between the Plaintiffs. The Court further awards Western Waterproofing Company judgment in the amount of $118,391.30 (for a total award of $129,000 as prayed in Count III of their complaint) plus interest and costs of suit. The Court further awards Mid-Continental Restoration Company $20,583.88 (for a total award of $22,-456 as prayed for in Count VI of their complaint) plus interest and costs of suit. Conversely, Springfield Housing Authority's motion for summary judgment is DENIED.