(No. 24612.—

H. H. GUNTHER *et al.* Appellees, *vs.* THE O'BRIEN BROS. CONSTRUCTION COMPANY *et al.*—(THE GALESBURG SANITARY DISTRICT, Appellant.)

*Opinion filed June 20, 1938—Rehearing denied October 5, 1938.*

Woolsey, Stickney & Lucas, and White & Hawxhurst, (Ralph R. Hawxhurst, Homer C. Dawson, and Edward S. Stickney, of counsel,) for appellant.

Hardy, Hardy & Witherell, Nelson & Gustafson, Lewis & Thompson, Burrel Barash, L. Fred O'Brien, Richard J. Neagle, E. D. Hardy, Wilfred Arnold, Nelson, Neagle & Gustafson, Wallace Thompson, James E. Davis, Harold Kalmon, John C. Kost, Herman S. Allen, Gumbart & Grigsby, Harry M. Mc-

CASKRIN, EDGAR F. THOMA, and JOHN M. QUINLAN, for appellees.

Mr. JUSTICE FARTHING delivered the opinion of the court:

The Appellate Court for the Second District affirmed a decree of the circuit court of Knox county which established mechanics' liens for materials, machinery, etc., furnished by appellees to the O'Brien Brothers Construction Company while that company was constructing sewers under a contract with the appellant, the Galesburg Sanitary District. The case is here by appeal, following the issuance of a certificate of importance.

Appellees proved claims totaling approximately $63,000, and the circuit court retained jurisdiction over the other claims for the purpose of taking proof as to them. The appellant does not dispute the fact that appellees furnished materials, machinery, etc., to the O'Brien Brothers Construction Company. It admits that they were entitled to liens on a balance of $38,612.21 out of the contract price of $692,230.62, which balance it has paid into court. The contention of appellant is that when the O'Brien Brothers Construction Company made default and ceased work, the district had a right to use the money retained by it out of monthly estimates, (fifteen per cent thereof,) amounting, at the time, to $87,288.41, in completing the project by reletting the contract. The appellees say that $87,288.41 is subject to their liens.

The sewer-construction contract was dated May 19, 1930. Article 11 provided that the construction company should be paid in monthly installments eighty-five per cent of the value of the work properly performed and of materials which were delivered for use therein, and paid for by the company, as "estimated and certified to by the engineer." These materials were to be properly stored so that they would be free from damage and loss. It was provided,

however, the engineer might waive payment for materials, but that payments to the contractor should not relieve it of the duty to furnish all equipment and materials necessary to the prosecution and completion of the work. This article also provided: "The remaining fifteen (15%) per cent will be due and payable upon the completion of the entire work in accordance with the terms hereof and its final inspection by the engineer and the filing with the clerk of the board of trustees of said sanitary district of the engineer's certificate recommending final acceptance;" etc.

Article 12 provided that no certificate given or payment made under the contract, except the final certificate or final payment, should be evidence of the performance of the contract, either wholly or in part, and that no payment should be construed to be an acceptance of defective work or improper materials.

Article 14 authorized the district to retain out of any payment then due or to become due the contractor, sufficient money to indemnify it against mechanics' lien claims on account of failure of payment by the contractor or any of its subcontractors for work, services, materials, machinery, etc. It also provided that the contractor would, if requested, furnish the district satisfactory written evidence, before payments were made, that there were no mechanics' or other liens or encumbrances on the premises, or upon any funds due or to become due to the contractor. The contractor agreed to pay the district any amounts it was compelled to pay to discharge liens and to reimburse it for its costs, damages and attorneys' fees incurred in connection therewith. These provisions, and attempts to enforce them, were not to discharge its bondsmen from liability.

Article 20 empowered the district to forfeit the contract and terminate the employment of the contractor if the district's engineer certified to its board of trustees that the refusal, neglect or failure of the contractor to comply with the terms of the contract furnished sufficient grounds for

such action. The district was empowered to enter upon the premises, to take possession of the materials, machinery, etc., and to employ others to complete the work and to furnish the necessary materials: "In case of such discontinuance of the employment of the contractor, the contractor shall not be entitled to receive any further payment under this contract until said work shall be wholly finished, at which time, if the unpaid balance under this contract shall be more than the expense and liability incurred by the sanitary district in finishing the work, this difference over and above the cost of finishing said work shall be paid by the sanitary district to the contractor, but if such expense and liability shall exceed such unpaid balance, the contractor shall pay the difference to the sanitary district on demand."

The construction company had received $494,293.97 in monthly payments under the contract before it made default on July 28, 1931. The district gave notice and passed all of the requisite resolutions and ordinances in connection with that default and in connection with the reletting of the sewer contract. In the interim, between the default and the date of reletting, December 1, 1931, the district expended $14,424.44 for attorneys' and engineering fees, watchman's services, keeping sewers and ditches open, building temporary bridges and in protecting the public against hazards occasioned by the unfinished sewer construction, etc. The work was completed under the new contract at a cost of $144,900. After payment of the three amounts listed, there remained $38,612.21 in the treasury of the sanitary district out of the original contract price of $692,230.62.

Notices of mechanics' liens were given the district by appellees, and on January 20, 1932, H. H. Gunther and others filed their bill of complaint to establish their liens against the money, bonds or warrants due or to become due the O'Brien Brothers Construction Company, and, later, other lien claimants filed answers and were given leave to intervene. The district answered the petitions. Evidence

was heard and the court found the issues for appellees and ordered the sanitary district to pay $22,989.43 principal and $2203.03 interest, in addition to the balance of $38,612.21 mentioned above.

The appellant contends that under section 23 of the Mechanics' Lien act (Ill. Rev. Stat. 1937, chap. 82, par. 23) no part of the $87,288.41 retained by it out of monthly estimates was money due or to become due to the O'Brien Brothers Construction Company until the work was finally completed, and that it had the right to use all or any part of that money to complete the work. The appellees contend that this fund, so retained, must be applied towards discharging their liens before any part of the $87,288.41 could be used to complete the sewers.

Section 23 of the Mechanics' Lien act provides in part: "Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement for any county, township, school district, city or municipality in this State, shall have a lien on the money, bonds or warrants due or to become due the contractor * * * under such contract." These liens, under this section, are upon the money, bonds or warrants instead of the property improved. (*Alexander Lumber Co.* v. *City of Farmer City,* 272 Ill. 264, 276.) The statute does not prejudice or infringe upon the rights of the municipality, but the person affected is the contractor who owes the money to those furnishing materials, labor, etc. *Standard Oil Co.* v. *Vanderboom,* 326 Ill. 418, 424.

Section 11 of the Sanitary District act (Ill. Rev. Stat. 1937, chap. 42, par. 310, p. 1307) provides that contracts for public improvements by a sanitary district shall be controlled by the provisions of the Local Improvement act. Section 91 of the latter act, (Ill. Rev. Stat. 1937, chap. 24, par. 800, p. 548,) provides that payments may be made from time to time on any local improvement contract upon certificates by the board or other designated officer, but that

a sufficient amount may be reserved from each payment to properly secure, in the judgment of the board, the faithful performance of the contract. The amounts thus reserved are to be paid over at such time and on such conditions as the board shall fix, after the work has been completed or accepted. This section formed the basis for the provisions of the contract between the sanitary district and the O'Brien Brothers Construction Company, whereby fifteen per cent of the monthly estimates was retained by appellant.

Section 91 of the Local Improvement act and article 11 of the contract were intended primarily to benefit the sanitary district. Article 20 of the contract expressly provides that in case of default, the contractor shall not be entitled to receive any further payments until the work is wholly finished. At that time, if the unpaid balance is more than the expense and liability incurred in finishing the work, this difference shall be paid to the contractor. Article 11 contains no reference to a default, but it provides that the fifteen per cent retained shall not be payable until the completion of the entire work in accordance with the terms of the contract.

If we adopt the position taken by the appellees, the sanitary district will be compelled to spend more than the original contract price, without any fault on its part. Section 21 of the Mechanics' Lien act provides that an owner of land on which a building or other improvement is erected, shall not be liable for more than the original contract price unless such owner wrongfully pays money to the contractor after notice of a lien has been served upon him. This has long been the policy of our law with reference to private contracts, (*Biggs* v. *Clapp,* 74 Ill. 335,) and although there is no express provision to the same effect with reference to public improvement contracts, the policy applies with even greater force to them, because they are paid for with public funds.

Appellees rely on *Alexander Lumber Co.* v. *City of Farmer City, supra,* in which case the city completed the improvement after the contractor had defaulted, without reletting the contract to the lowest responsible bidder. More than $500 was involved and the city was bound, by law, to relet the contract instead of doing the work itself. We held that the city could not take credit for expenditures thus made, to the detriment of the lienors. In the case before us, the contract was relet to the lowest responsible bidder, and the sanitary district is entitled to take credit for the amount it spent in completing the sewers. There was no illegal expenditure shown, and for that reason the *Farmer City case, supra,* is not in point.

Appellees rely on *Nat. Bank of LaCrosse* v. *Petterson,* 200 Ill. 215, where the municipality had issued bonds to the contractor after notice of lien had been given. We held that since the bonds were not negotiable they were subject to a mechanic's lien in the hands of the person who purchased them from the contractor. That case is not in point.

The appellees contend that the sanitary district had no power to spend $14,424.44, after the default and before the reletting, for engineers' and attorneys' fees to protect the public, to guard materials on hand, to protect the work already done and for extensions of easements, etc., made necessary by the default of the original contractor. The court found that these amounts were reasonable and that they were necessary expenditures and this is not questioned, but appellees say the district had no power to expend this amount without letting a contract in conformity with section 11 of the Sanitary District act. Only four of the items embraced in the $14,424.44 were in excess of $500. One item was money paid a watchman for his services and for the use of his car. Another was paid to engineers for their services. The third was money paid to an advertising company for loss of use of its billboards, and the fourth was for attorneys' fees. Section 11 requires that work to be

done by sanitary districts, where the expense exceeds $500, shall be let by contract to the lowest responsible bidder. None of these expenditures which exceeded that amount was for work which could properly be done by letting a contract to the lowest bidder. Engineering and legal services were required before the contract could be relet. Under the facts, service contracts such as these could not be let to the lowest bidder with any assurance of satisfactory results. The same is true of the money spent for the watchman's services. The loss of use of billboards was occasioned by the delay in completing the sewers, and this is an item of damage. None of these items, under the facts present, was within the purview of section 11, and the sanitary district was entitled to use the fifteen per cent fund retained by it for these purposes, before paying appellees' claims.

The effect of the remaining argument advanced by appellees in support of the decree and a judgment of affirmance, is that it would be inequitable to deprive them of their liens, because the sanitary district failed to obtain the statutory surety bond, conditioned for payment of claims for labor and materials furnished to the contractor. In other words, they say that, because of this, the expenditures made by the district were illegal, and that it cannot take credit for them to the prejudice of appellees. It is generally held that a municipality is not liable, because of such omission, to laborers or materialmen for work done or materials furnished. (64 A. L. R. 678.) The sureties on the bond that was given are not parties to this suit and the question of liability on the bond is not before us. Neither is it a material question. Mechanics' liens are statutory, and all that may be considered in determining whether they exist or not, is what the statute creating them contains. There is no provision in the Mechanics' Lien act to the effect that anyone furnishing labor, materials, etc. shall have a lien in the event a municipality fails to obtain a bond conditioned as required by the Local Improvement act.

Appellees perfected their liens when they complied with the statute, but that does not mean that they were entitled to a lien on money that was not due or to become due to the O'Brien Brothers Construction Company. By the terms of the contract the only money which finally became due was the $38,612.21, which remained after the sanitary district had paid the expense occasioned by the contractor's default and the cost of completing the sewers under the re-letting to Alexander and Repass Brothers.

For the reasons indicated, the judgment of the Appellate Court and the decree of the circuit court are reversed and the cause is remanded to the circuit court, with directions to render a decree in conformity with the views herein expressed.

*Reversed and remanded, with directions.*