Roy Koenig, Trading as R. H. Koenig and Son, Newkirk Transit Mix, Inc., and Joliet Boiler and Machine Works, Inc., Plaintiffs-Appellees, v. McCarthy Construction Company, Inc., Gomorra and Girot Construction Company, and City of Joliet, Illinois, Defendants-Appellants.

Gen. No. 10,434.

Opinion filed July 12, 1951. Released for publication August 1, 1951.

BLATT & BLATT, of Joliet, for certain appellant; GEORGE N. BLATT, JR., of Joliet, of counsel.

CHARLES H. BLIM, and STUART C. KROESCH, both of Joliet, for appellees.

MR. JUSTICE BRISTOW delivered the opinion of the court.

Defendants, McCarthy Construction Co., Inc., a corporation, and the City of Joliet, Illinois, are appealing from a decree entered by the circuit court of Will county awarding plaintiffs liens in the respective amounts of $2,156.33 to plaintiff Roy Koenig, $1,105.66 to plaintiff Newkirk Transit Mix, Inc., and $640 to plaintiff Joliet Boiler & Machine Works, Inc., together with interest thereon, on funds withheld by the City of Joliet and due to the defendant McCarthy Construction Co., Inc. under a public improvement contract.

The salient issues on this appeal are whether plaintiffs can be deemed to be subcontractors under the terms of the Illinois Lien Act, and, if so, whether plaintiffs are entitled to recover the actual unpaid balance due them from the money withheld by the city from the general contractor, or whether they are limited to the sum due to the alleged subcontractor to whom plaintiffs furnished materials, at the time notice of the lien was given to the general contractor.

Under the stipulated facts, it appears that on August 3, 1948, defendant City of Joliet entered into a contract with defendant McCarthy Construction Co., Inc. for the construction of a sewer system. On August 10, 1948, defendant McCarthy Construction Co. contracted with defendant Gomorra & Girot Construction Co. for 3,800 precast manhole rings which were to be picked up by the McCarthy Construction Co. at Gomorra & Girot Construction Co.'s place of business located about a mile from the construction site. The Gomorra & Girot Construction Co. thereupon entered into contracts with the respective plaintiffs, whereby plaintiff Roy Koenig, doing business as R. H. Koenig

& Son, furnished certain specified wooden and steel forms for the manhole rings; plaintiff Newkirk Transit Mix, Inc., furnished the concrete; and plaintiff Joliet Boiler & Machine Works, Inc. furnished certain steel molds.

Although plaintiffs delivered the requisite materials to defendant Gomorro & Girot Construction Co. in compliance with their contracts, the Gomorra & Girot Construction Co. did not pay plaintiffs therefor, and defaulted on its contract with the McCarthy Construction Co. after delivering only 310 of the 3,800 manhole rings specified in the contract. For the rings delivered, the Gomorra & Girot Construction Co. was paid $2,200 by the McCarthy Construction Co., which is presently holding the balance of $590 due thereon.

It was further stipulated that, although defendant McCarthy Construction Co. originally had no knowledge of the negotiations or contracts between plaintiff and the Gomorra & Girot Co., the McCarthy Construction Co. was served with all notices of unpaid claims in accordance with the requirements of the Illinois Lien Act.

On the basis of substantially the foregoing facts, the circuit court entered a decree that plaintiffs each had liens on the funds held by the city and due the McCarthy Construction Co. to the extent of plaintiffs' unpaid balances owing from the Gomorra & Girot Construction Co., together with interest thereon. Defendants have prosecuted this appeal from that decree.

Defendants contend that, from the stipulated facts, it is evident that the Gomorra & Girot Construction Co. was merely a supplier or materialman to the principal contractor rather than a subcontractor, on the grounds that the work was performed at defendant Gomorra & Girot's place of business and not at the site of the construction, and that the only contact be-

tween the parties was the periodic picking up of the rings by the defendant McCarthy Construction Co., which had no control over Gomorra and Girot's operations. Under these circumstances, defendants argue that, inasmuch as the legislature meant by "subcontractor" one who supplies material directly to the project, the Girot Co. was not a subcontractor, and its intervention breaks the sequence of contracts, so that plaintiffs cannot be deemed to be subcontractors within the meaning of the Act, and consequently are not entitled to assert rights thereunder.

Moreover, defendants assert further that even if plaintiffs are deemed subcontractors within the meaning of the Act, their recovery should be limited to the amount due the Gomorra & Girot Construction Co. from the McCarthy Construction Co. at the time the notices of the liens were given.

Plaintiffs, however, reject that interpretation of the statute, and maintain that under the amendment of 1935 to sec. 23 of the Lien Act [Jones Ill. Stats. Ann. 74.23], subcontractors, such as plaintiffs, were expressly granted the right to claim liens on funds due from the city under contracts for public improvements, and that the statute does not limit their liens to the amount due to their immediate contractor.

██ In interpreting the word "subcontractor," appearing in the Illinois Lien Act (ch. 82, Ill. Rev. Stat. 1949), this court shall be guided by the established rules of statutory construction, whereby the primary aim is to ascertain the legislative intent (*Shaeffer v. Burnett,* 221 Ill. 315) which may be discerned from the history of the legislation or from the use of the terms in other sections of the same or other Illinois statutes. (*Alexander Lumber Co. v. Coberg,* 356 Ill. 49.) This approach must precede any analogy to interpretations of allegedly similar statutes by courts of other jurisdictions.

The relevant sections of the Illinois Lien Act, *supra,* provide:

Sec. 21. [Ill. Rev. Stat. 1949, ch. 82, par. 21; Jones Ill. Stats. Ann. 74.21] ''Every mechanic, workman or other person who shall furnish any materials, apparatus, machinery or fixtures, or furnish or perform services or labor for the contractor, or shall furnish any material to be employed in the process of construction as a means for assisting in the erection of the building or improvement in what is commonly termed form or form work, where concrete, cement or like material is used in whole or in part, shall be known under this Act as a subcontractor, and shall have a lien for the value thereof . . .''

Sec. 23. ''For the purpose of this section 'contractor' includes any subcontractor. Any person who shall furnish material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement for any county, township, school district, city or municipality in this State, shall have a lien on the money, bonds or warrants due or to become due the contractor having a contract . . .''

██ ██ It is apparent that the statute, in defining ''subcontractor,'' makes no artful distinction as to where the materials that are employed in the process of construction are delivered. In fact, the phrases ''subcontractor'' and ''materialmen'' are used interchangeably in sec. 21. Moreover, the approach of the courts in interpreting who are entitled to assert liens under the statute, has not been to distinguish between materialmen and contractors, but to ascertain whether the material went into the permanent use of the improvement (*McMillan v. Joseph P. Casey Co.*, 311 Ill. 584), and whether the material was furnished to the contractor or to the subcontractor. (*Alexander Lumber Co. v. Coberg, supra.*)

Prior to the amendment of 1935, which added the clause, "For the purpose of this section 'contractor' includes any subcontractor," sec. 23 was interpreted to give only persons furnishing materials to the contractor who had the contract with the governmental unit for the public improvement, a lien on the money, bonds, or warrants due or to become due such contractor, and persons furnishing materials to a subcontractor were not deemed to be under the Act. (*Alexander Lumber Co. v. Coberg, supra.*) Directly after this decision, sec. 23 was amended as hereinbefore noted.

As amended, sec. 23 has been construed in texts by legal scholars, and in dictum by the Illinois Appellate Court in *Chicago Pump Co. v. Lakeside Engineering Corp.*, 296 Ill. App. 126.

In "Illinois Mechanics' Liens," 1936 supp., Prof. Love states, "It would seem to be the legislative intent, therefore, to allow a lien to any person who shall furnish material, apparatus, fixtures, machinery, or labor to any contractor (i.e., either an original contractor or a subcontractor) having a contract for public improvement . . ."

In the *Chicago Pump* case, *supra,* the court, though actually determining lien rights accruing prior to the amendment, analyzed the legal effect of the section as amended, and stated:

"These amendments, whether the legislature had under consideration the effect of the Coberg case or not, in our judgment provides the lien for such persons, as plaintiff now is (one furnishing materials to a subcontractor) and that, therefore, had the materials which it furnished been furnished subsequent to the amendment of 1935, the remedy which he here seeks would have been plenary and complete."

Thus, it appears that, under a reasonable interpretation of the Act, plaintiffs, who furnished the

materials employed in the construction of sewer rings, involving forms work and the use of concrete, as well as defendant Gomorra & Girot Construction Co., which provided the completed sewer rings, can properly be regarded as subcontractors under the definition in the Lien Act. Inasmuch as plaintiffs furnished these materials to another subcontractor for the construction of a public improvement and gave proper notice of their unpaid claims, plaintiffs were properly entitled to a lien on the money, bonds or warrants due the defendant McCarthy Construction Co., which had the contract with the city.

The next query is whether these liens may be asserted for the full amount owed plaintiffs by the Gomorra & Girot Construction Co., or whether they are limited to the amount due the Gomorra company from the principal contractor, the McCarthy Construction Co.

It is clear from the statute that the fund on which the lien attaches is the money due the original contractor, and the statute itself does not impose any limitations with reference to the amount owed by the principal contractor to the subcontractor. Under these circumstances, plaintiffs argue that they are entitled to the full amount owing on their contracts with the Gomorra & Girot Construction Co.

Defendants, however, in refuting this argument, cite an A. L. R. Note (112 A.L.R. 820), wherein it is stated:

". . . it is generally held that a lien for labor and materials furnished to a subcontractor, upon the amount due from the public to the principal contractor, is dependent upon, and its extent measured by, the amount due from the principal contractor to the subcontractor at the time notice for the lien is given . . . and if the subcontractor was paid in part, the lien or claim in favor of such laborers and materialmen at-

taches upon the fund due to the principal contractor only to the extent of the amount still owing by the principal contractor to the subcontractor." (Citation of cases.)

■ While this court respects, and adheres to the precedent established by the courts of other jurisdictions, it is apparent that the determination of the existence and extent of a lien depends not only upon the precise wording of the particular Lien Act (*Garrison v. Borio,* 61 N. J. Eq. 236, 47 Atl. 1060), which vary among the states, and upon the interrelationship of several state statutes (*Devitt v. Schotten,* 274 N. Y. 188, 8 N. E. (2d) 481; *Brainard v. Kings County,* 155 N. Y. 538, 50 N. E. 263; *Upson v. United Engineering & Contracting Co.,* 72 Misc. 541, 130 N. Y. S. 726), but also upon the specific terms of the contract before the court. (*Devitt v. Schotten, supra.*) Therefore, these cases cannot be deemed determinative *per se.*

It should be noted that, while some of the decisions limiting the extent of the lien to the amount owing by the contractor to the defaulting subcontractor, at the time the claim is filed are predicated upon the express terms, or fair implication of the statute, the same conclusion has been reached even under statutes which evince no express intention to limit the lien, such as that involved in the instant case.

The reasoning in such cases is expressed by the court in *Thurber Construction Co. v. Kemplin* (Tex. Civ. App.), 81 S. W. (2d) 103, where it is stated at p. 108:

"Where a subcontractor, through no fault of the original contractor, abandons his subcontract, owing for labor and materials accounts far in excess of what he has earned under his subcontract, as here, if such creditors could subject to the payment of their claims the unearned funds of the general contractor which were not due, or to become due such defaulting subcontrac-

tor, it is obvious that the general contractor, who had nothing to do with incurring such excessive claims would have nothing left from which to complete the project which his subcontractor had abandoned.''

Although this precise issue has not been determined by the courts of this jurisdiction, the Illinois Supreme Court, in *Gunther v. O'Brien Bros. Construction Co.,* 369 Ill. 362, in adjudicating a related factual situation, followed a similar approach to that in the *Thurber* case, and imposed a limitation on the extent of the lien, despite the fact that the statute itself was silent thereon. Although plaintiffs cite this case as an authority for allowing liens in the full amount of their respective claims, it appears to this court that the case tends to support defendants' interpretation of the statute.

Plaintiffs therein had furnished certain labor and material to the O'Brien Construction Co., which had a contract for certain public improvements with the Sanitary District. The O'Brien Construction Co. failed to pay plaintiffs, and defaulted on its contract with the Sanitary District, which was obliged to relet the contract. Plaintiffs endeavored to assert liens under Sec. 23, against the funds held by the Sanitary District for this project, but the amount available out of the original contract price was not sufficient to pay plaintiffs' claims in full.

The court held that the Sanitary District was not liable for more than the original contract price in the settlement of the claims for labor and materials furnished to the contractor, unless the District had paid out money to the contractor after service of notice of the liens, notwithstanding the absence of express statutory limitations comparable to those applicable to private contracts.

The court stated at p. 368: ''If we adopt the position taken by appellees (the plaintiffs therein) the Sanitary

District will be compelled to spend more than the original contract price without any fault on its part." This reasoning is similar to that in the *Thurber* case, *supra,* where the court stressed the financial burden sought to be imposed upon the principal contractor through no fault on his part.

Similarly, in the instant case, if plaintiffs claims are paid out of the fund due the defendant McCarthy Construction Co. from the city, that construction company will have been charged, not merely the contract price for the sewer rings it received, but the additional sums due the creditors of the Gomorra & Girot Construction Co., and at the same time will be obliged to relet the contract and pay another subcontractor to complete the work. This result would be tantamount to imposing a limitless liability upon the original contractor for public improvements, for he would be liable for all the financial follies, and excessive contracts entered into by his subcontractors. No such statutory intent should be construed, either with reference to the liability of the contractor or of the municipality, in construing sec. 23 of the Lien Act.

In the *Gunther* case, *supra,* the court expressly rejected such a statutory interpretation with reference to the liability of the Sanitary District, and construed sec. 23 in the light of other sections of the statute, and in accordance with the settled policy of the law with reference to private contracts. The court stated at p. 368:

"Section 21 of the Mechanics Lien Act provides that an owner of land on which a building or other improvement is erected shall not be liable for more than the original contract price unless such owner wrongfully pays money to the contractor after notice of a lien served upon him. This has long been the policy of our law with reference to private contracts (*Biggs v.*

*Clapp,* 74 Ill. 335), and although there is no express provision to the same effect with reference to public improvement contracts, the policy is applicable with even greater force to them because they are paid for with public funds.''

The court further rejected the contention, urged also by the plaintiffs herein, that plaintiffs were entitled to liens on the full unpaid amounts under their respective contracts, and limited the liens to the amount earned by the defaulting contractor. The court stated: ''Appellee's perfected their liens when they complied with the statute, but that does not mean that they were entitled to a lien on money that was not due, or to become due, to the O'Brien Construction Co.''

██ It is our judgment, therefore, that inasmuch as sec. 23 of the Lien Act has been construed by our Supreme Court in the *Gunther* case, *supra,* to limit the liens of those furnishing materials to a contractor for a public improvement, to the amount earned and due to the contractor prior to his default, and since this section expressly provides that the term ''contractor'' includes any ''subcontractor,'' it is both reasonable and proper to conclude that persons, in the position of plaintiffs, furnishing materials to a subcontractor, have no greater rights than persons furnishing materials to a contractor, and both are limited, in the assertion of liens, to the amount due their immediate contractors at the time notice of their liens is given. Any other construction would not only impose an absolute liability upon the original contractor not contemplated by the statute, but be contrary to established principles of law with reference to liens accruing under private contracts.

On the basis of this analysis, plaintiffs are entitled only to a pro rata share of the unpaid balance of $590 which was owing to the defendant Gomorra & Girot Construction Co., at the time plaintiffs gave notice of

their liens. The decree of the circuit court, allowing liens against the fund due the defendant McCarthy Construction Co. in the full amount of plaintiffs' claims, is in error, and the judgment must be reversed in part, and remanded with directions to enter a decree in accordance with the views expressed herein.

*Judgment reversed in part and remanded with directions.*