(No. 86-CC-1899-)

J&W ALLEN CONSTRUCTION CO. and ODUM CONCRETE PRODUCTS, INC., Claimants, *v.* JOHN KRAMER, Secretary of the Department of Transportation, Respondent.

*Opinion filed April 19, 1989.*

ROBERT P. SCHULHOF, for Claimant.

NEIL F. HARTIGAN, Attorney General (DAVID D. CRANE, Special Assistant Attorney General, of counsel), for Respondent.

RAUCCI, J.

This case has been brought by J&W Allen Construction Company, Inc., and Odum Concrete Products, Inc., jointly as Claimants (hereinafter referred to as Allen and Odum respectively) against Respondent for a "violation" of section 23 of the Mechanics' Liens Act (Ill. Rev. Stat., ch. 82, par. 23) pertaining to liens against public funds and proceedings for accounting. The *ad damnum* of the complaint of Claimants seeks the sum of $6,518.50 plus costs of suit.

Claimants' complaint alleges that on December 27, 1983, Claimant Odum commenced an action in the circuit court of Williamson County, Illinois, under section 23 of the Mechanics' Liens Act. (Ill. Rev. Stat., ch. 82, par. 23.) The defendants in that case were Claimant Allen and Western Casualty and Surety Company who carried the bond for the general contractor, Three Star Construction Company, under its contract with the State of Illinois, Department of Transportation, No. 33121. The general contractor, Three Star Construction Company, had taken bankruptcy and was initially not joined as a defendant. Claimant Allen joined issue with Claimant Odum in the circuit court of Williamson County by answer and counterclaim praying for the enforcement of their lien against public funds.

Both Claimants Odum and Allen provided statements of claim for lien to Robert Graham, chief of the Bureau of Claims of the Illinois Department of Transportation. On December 6, Graham acknowledged in writing the receipt of Claimant Allen's statement of claim for lien on November 28, 1983, and in the same letter acknowledged the suit of Claimant Odum that had been filed in Williamson County and that prior to the filing of that suit, Claimant Odum had

filed a claim for lien with the Department of Transportation and recited as follows:

"It is my understanding that essentially the lien of J & W Allen and the lien of Odum Concrete are the same. In other words, if J & W Allen would receive payment, the funds would be turned over to Odum."

Approximately two weeks later, Graham acknowledged receipt of the answer and counterclaim of Claimant Allen filed in the Williamson County proceedings asserting a lien against public funds under section 23 of the Act. Copies of both letters of Graham were provided to Bernard Reinert, the attorney for Western Casualty and Surety Company.

Western Casualty and Surety Company participated in the Williamson County court action and filed motions, answers and affirmative defenses which raised various issues.

On June 10, 1985, an initial judgment order was entered by the Williamson County Circuit Court finding that Claimant Allen owed Claimant Odum the sum of $6,518.50 for materials supplied to Allen for work performed by Allen under its contract with the general contractor, Three Star Construction Company on Illinois State Contract 33121. In the findings portion of that order the following appears:

"4. That Odum Concrete Products Company, Inc., moves to dismiss its claim against Western Casualty and Surety Company and said Motion is hereby granted, and Odum Concrete Products action against Defendant, Western Casualty and Surety Company, is hereby dismissed with prejudice."

The Williamson County Circuit Court thereupon granted judgment in favor of Claimant Odum against Claimant Allen "on accounting had" in the amount of $6,518.50.

Thereafter, Claimants filed an action in Federal court to obtain and lift the bankruptcy automatic stay

against Three Star Construction Company which had been in bankruptcy under Chapter 7 of the United States Bankruptcy Code. The automatic stay was lifted by the Federal bankruptcy court and the Williamson County action was amended to make Three Star Construction Company a party defendant.

After Claimants amended their pleadings in Williamson County Circuit Court to add Three Star Construction Company as a party defendant, after having obtained a lifting of the automatic stay in bankruptcy, notice was given to Western Casualty and Surety Company who, on July 3, 1985, filed "objections" to the motions of Claimants for leave to file their amended complaints in Williamson County.

Thereafter, a second judgment order was entered by the Williamson County Circuit Court on August 20, 1985 (see Plaintiffs' Exhibit 9), approximately 70 days after its initial judgment order on June 10, 1985, in which the Williamson County Circuit Court found as follows:

"1. This Court takes notice that a Judgment Order against J & W Allen Construction Company and in favor of Odum Concrete Products, Inc., was entered in this cause on June 10, 1985, the Court hereby adopts the findings in said Judgment Order by reference.

2. That in compliance with Illinois Revised Statutes, Ch. 82, Sec. 23, Odum Concrete Products Inc., on October 23, 1983, served upon Three Star Construction Company and John Kramer, Secretary of Illinois Department of Transportation a sworn statement of claim for lien setting forth with particularity the basis for the amount owed Odum Concrete Products, Inc., $6,518.50. That said statement of claim for a lien was acknowledged as received on November 18, 1983, by the State of Illinois.

3. That in compliance with Illinois Revised Statutes, Ch. 82, Sec. 23, J & W Allen Construction Company, on November 28, 1983, served upon Three Star Construction Company and John Kramer, Secretary of Illinois Department of Transportation a sworn statement of claim for lien setting forth with particularity the basis for the amount owed Odum Concrete Products, Inc., $5,898.00. The said statement of claim for a lien was acknowledged as received on December 6, 1983, by the State of Illinois.

4. That at the time the statements of claims for liens were served by Odum Concrete Products, Inc., and J & W Allen Construction Company,

respectively, the State of Illinois acknowledged having in its possession funds in excess of the claimed amounts due and payable to Three Star Construction Company against which no vouchers or other evidence of indebtedness had been issued.

5. That within ninety (90) days of the service of said notice for claim of lien, Odum Concrete Products, Inc., instituted an action in the Circuit Court for the First Judicial Circuit of Williamson County, Illinois, Case No. 83-LM-97, in compliance with Chapter 82, Section 23.

6. That Odum Concrete Products, Inc., and J & W Allen Construction Company provided goods, materials and services which were incorporated into a public improvement pursuant to state contract 33121 with the Illinois Department of Transportation in Franklin County, Illinois.

7. That $5,898.00 is due and owing and currently outstanding by Three Star Construction Company and the State of Illinois to J & W Allen Construction Company.

8. That $6,158.50 [sic] is currently due and owing by J & W Allen Construction Company, Three Star Construction Company and the State of Illinois, for materials provided by Odum Concrete Products, Inc., which were incorporated into public improvement pursuant to contract number 33121 with the Illinois Department of Transportation in Franklin County, Illinois.

9. That there has been filed with the Court in this cause an Order executed by the Trustee in Bankruptcy for Three Star Construction Company lifting the stay of bankruptcy for purposes of this accounting.

10. That all claims against defendant, Western Casualty and Surety Company, a corporation, were dismissed with prejudice by Order of this Court on June 21, 1985.

11. That pursuant to accounting had and obtained, J & W Allen Construction Company is adjudged to have a lien in the amount of $5,898.00 on all monies, account bonds and warrants due or about to have become due to Three Star Construction Company which were in the possession of the State of Illinois on December 6, 1983, the date of State's acknowledgment of claim for lien filed by J & W Allen Construction Company.

12. Pursuant to this accounting had and obtained, Odum Concrete Products, Inc., is adjudged to have a lien on all monies, bonds and warrants due or about to become due to Three Star Construction Company which were in the possession of the State of Illinois on November 18, 1983, the date the State of Illinois acknowledged claim for lien served by Odum Concrete Products, Inc.

13. That pursuant to the Judgment Order filed in this cause on June 10, 1985, it has been determined that J & W Allen Construction Company owes the sum of $6,518.50 to Odum Concrete Products, Inc., therefore, the lien of J & W Allen Construction Company in the amount of $5,898.00 is subsumed by the lien of Odum Concrete Products, Inc., in the amount of $6,158.50 (sic)."

The Williamson County court ordered as follows:

"WHEREFORE, it is the Judgment, Order and Decree of this Court that pursuant to accounting had that Odum Concrete Products, Inc., is adjudged to have a lien of $6,518.50 on funds held, or previously held, by the State of Illinois, payable to Three Star Construction Company."

It is not disputed by Respondent that at the time Claimants filed their statements of claim for lien and complaints in the Williamson County Circuit Court that the State had on hand sufficient remaining unvouchered funds to pay this claim. Robert Graham of the Illinois Department of Transportation testified as follows:

1. There was a contract number 33121 for public improvements between the State of Illinois and Three Star Construction Company.

2. He received a claim for lien on public funds from Odum Concrete on 10-31-83.

3. On the same date, Graham received Claimant Odum's suit for accounting filed in Williamson County.

4. Graham received a statement of claim for lien from Claimant Allen on November 28, 1983.

5. Graham received a cross-complaint by Claimant Allen in the accounting suit on December 2, 1983.

6. Graham acknowledged in writing the Department's receipt of the respective liens and acknowledged in writing that the complaints had been filed in accordance with the statute.

7. There were unvouchered funds remaining sufficient to pay the claim of Claimants.

8. Graham knew that the general contractor, Three Star Construction Company, was out of business, not transacting any business and had taken bankruptcy although Graham did not know the status of the bankruptcy.

9. Graham advised attorneys for both Claimants that he was withholding funds for the claim of Claimants.

10. On April 3, 1985, the Department of Transportation paid the unvouchered funds in the sum of $11,993.22 to Western Casualty Insurance and Surety Company in care of their attorney, Bernard A. Reinert in St. Louis, Missouri (also see Plaintiffs' Exhibit 8).

11. A letter from Robert Graham to Bernard A. Reinert dated August 9, 1983, introduced into evidence as Plaintiffs' Exhibit 6 contained the following assertions by Graham, to wit:

"Dear Mr. Reinert:

Your letter of July 29, 1983, is a disappointment to me. Your statement that your client (Western Casualty and Surety Company) is no longer willing to pay the Allen Firm (Claimant J & W Allen) any monies be it out of project funds or its own funds is a direct contradiction of your agreement with me and a prior agreement made by Stanley Wilson (owner of Three Star Construction Company)."

12. At the time Graham attended a hearing on the proceedings in the Williamson County Circuit Court in April, he had checked the status of the "account" with the Department of Transportation and found that the funds had been vouchered out to Bernard Reinert and Western Casualty and Surety Company "a month earlier." As far as Graham knew, there had been no decision made to voucher the money and "it was just one of those things that slipped through." On December 2, 1985, the Department of Transportation wrote Claimant Odum and stated that the Department was denying Odum's right to recover the funds with no specific reason being given in the letter. Graham said this was on the advice of counsel David Crane who responded to Claimant on behalf of the Department. On December 2, 1985, Crane (Bernard Reinert's partner) was acting as

special assistant Attorney General for the Department of Transportation.

## THE POSITION OF RESPONDENT

The Respondent takes the position that Claimants do not have a lien against public funds for the following reasons:

1. Respondent paid out lienable funds before receiving Claimants' notice.

2. The retainage paid out by Respondent was nonlienable.

3. Claimants failed to join the general contractor, Three Star Construction Company, at the outset of the proceedings in Williamson County and failed to exercise diligence in petitioning the Federal bankruptcy court to lift the automatic stay against Three Star Construction, and,

4. The suit commenced by Claimants in Williamson County was an improper venue because the road project was located in Franklin County.

Respondent cites *Gunther v. O'Brien Bros. Construction Co.* (1938), 369 Ill. 362, 16 N.E.2d 890, as support for the proposition that when Claimants filed their claims for lien and suits for an accounting, there were no funds in the hands of Respondent to which the liens could attach. The case cited by Respondent arose out of a situation where subcontractors had provided materials, machinery, *etc.* to the O'Brien Bros. Construction Company while that company was constructing sewers under a contract with the Galesburg Sanitary District. The contention of the sanitary district on appeal from adverse decisions in the trial and appellate courts was that after the general contractor defaulted, the sanitary district had the right to use the remaining

money or portions of it retained out of monthly estimates to complete work on the defaulted project before honoring the liens of subcontractors under section 23 of the Mechanics' Liens Act (Ill. Rev. Stat., ch. 82, par. 23.) The sanitary district contended that when the general contractor defaulted, the district had the right to use all or any part of the money remaining to complete the work. The lien Claimants contended that the funds so retained should be applied toward discharging their liens before the money could be used to complete the project. The supreme court held in effect that if they adopted the position taken by the Claimants, the sanitary district would be compelled to spend more than the original contract price without any fault on the part of the district. The evidence at trial had shown that the sanitary district had failed to obtain a surety bond, conditioned for payment of claims for labor and materials furnished to the contractor on the project. The supreme court pointed out that a municipality is not liable because of such an omission. The court pointed out that the sureties on the bond that was given were not parties to the suit and the question of liability on the bond was not before the court (369 Ill. 362, 16 N.E.2d 890, 894). The supreme court went on to point out that mechanics' liens are statutory, and all that may be considered in determining whether they exist or not, is what the statute creating them contains. The court concluded:

"There is no provision in the Mechanics Lien Act to the effect that anyone furnishing labor, materials, etc., shall have a lien in the event a municipality fails to obtain a bond conditioned as required by the local improvement Act."

In *Gunther v. O'Brien, supra,* the evidence showed that after the contractor's default, the district had expended $14,424.44 for attorneys and engineering fees, watchman's services, keeping sewers and ditches open,

building temporary bridges and in protecting the public against hazards occasioned by the unfinished sewer construction, *etc.* The work was completed under a new contract which was let at a cost of an additional $144,900. The district, after payment of the three amounts listed, retained $38,612.21 in the treasury of the sanitary district out of the original contract price of $692,230.62. The district admitted that Claimants had a lien on $38,612.21 but objected to the allowance of any further sums. The supreme court held in favor of the district because to allow subcontractors' liens in excess of the amount remaining ($38,612.21), the sanitary district would have been compelled to spend more than the original contract price out of public funds without any fault on its part.

In *Brady Brick & Supply v. Lotito* (1976), 43 Ill. App. 3d 69, 356 N.E.2d 1126, the Second District Appellate Court cited *Gunther v. O'Brien, supra,* for the proposition that the Mechanics' Liens Act was enacted to protect materialmen who, in good faith, furnish materials for the construction of a building and to allow the materialman to collect his bill from the owner via a mechanics' lien foreclosure suit, when the contractor, subcontractor, and/or owner fail to pay the material-man. Also, as a general rule, the subcontractor's rights are based upon and limited by the original contractor's contract with respect to price. A subcontractor whose claims are unpaid may not recover from the original owner a sum which will make the total cost to the owner greater than that specified in the original contract between the owner and the original contractor.(*Gunther v. O'Brien Bros. Construction Co.*, 369 Ill. 362, 368.) In the *Brady* case, the appellate court affirmed a judgment in favor of Brady on its mechanic's lien claim against the contention by the defendants that if the judgment in

favor of Brady were allowed to stand, the defendants would have paid $26,750 to construct a building which should have only cost $21,000. The court pointed out that ordinarily the owner cannot be compelled to pay more than the original contract price, but there is an exception where the owner makes payments to the original contractor which are in violation of the rights of a subcontractor. Then, as to such person, such payments are wrongfully made and the owner is not entitled, in his controversy with the subcontractor, to any credit for payments wrongfully made. Under such circumstances, the owner may be compelled to make payment to a subcontractor even though he has made payment in full to the original contractor.

In *Tison & Hall Concrete Products v. Asher* (1967), 86 Ill. App. 2d 34, 229 N.E.2d 137, in a suit to enforce a lien on public funds, the Fifth District Appellate Court cited the holding of *Gunther v. O'Brien Bros., supra,* for the proposition that the claims of persons furnishing materials to a subcontractor are limited in the assertion of liens to the amount due their immediate contractors at the time notice of their liens is given. In *Tison & Hall Concrete Products,* a suit was initiated by a subcontractor's supplier against the general contractor and the subcontractor to enforce the lien on public funds due the general contractor. The general contractor had a contract with the Department of Public Works to construct a prison in Johnson County. A subcontractor, Asher, entered into a subcontract for masonry work. The subcontractor entered into an agreement with the plaintiff under which the plaintiff furnished part of the material needed for the masonry work on the prison. Of total billings of plaintiff in the amount of $29,712.77, only $11,167.15 were paid leaving a balance due plaintiff

of $18,545.62. In the contract between the masonry subcontractor and the general contractor, it had been provided that the general contractor should not be required to pay the subcontractor any sums greater than $242,000. The general contractor argued that any claim of the plaintiff to a lien for the full amount should have been limited to the amount of the indebtedness of the general contractor to the subcontractor. Incidental to this argument the general contractor argued that the trial court had erred in refusing to hear evidence concerning the status of the account between the subcontractor and the contractor with respect to the $242,000 limitation, and what monies had been paid by the general contractor to the subcontractor. Payments made to the plaintiff were made directly by the general contractor and under the contract between the general contractor and the subcontractor were to be deducted from the subcontractor's amount. Further, the contract provided that the general contractor's responsibility to the subcontractor should not exceed $242,000 and was "firm." The court held as follows:

"This arrangement implies that Asher (general contractor) would only be required to pay the bills of a supplier if the total amount incurred on behalf of the sub-contractor was less than the contract price."

The appellate court concluded that it was an error for the trial court to refuse to allow testimony concerning the Asher-Barfield account. The court held that such evidence was clearly relevant in determining the extent of any lien on public funds claimed by a supplier of the subcontractor, Barfield. The Court cited *Koenig v. McCarthy Construction Co.*, 344 Ill. App. 93, 101, for the proposition that "the determination of the existence and extent of a lien depends not only upon the precise wording of the particular lien act * * *, but also upon the specific terms of a Contract before the Court." The case was remanded for evidence to be heard on the

status of the account between the general contractor and the subcontractor. Also see *Housing Authority of County of Franklin v. Holtzman* (1970), 120 Ill. App. 2d 226, 256 N.E.2d 873, 877.

In the case at bar, the Williamson County Circuit Court found as follows:

"7. That $5,898.00 is due and owing and currently outstanding by Three Star Construction Company and the State of Illinois to J & W Allen Construction Company.

8. That $6,158.50 [*sic*] is currently due and owing by J & W Allen Construction Company, Three Star Construction Company and the State of Illinois, for materials provided by Odum Concrete Products, Inc., which were incorporated into public improvement pursuant to contract number 33121 with the Illinois Department of Transportation in Franklin County, Illinois." (See Plaintiffs' Exhibit 9).

Respondent offered no evidence with respect to the status of the account between Respondent and the general contractor, Three Star Construction Company; nor was any evidence offered with respect to the status of the account between Three Star Construction Company and J & W Allen. Robert Graham, a representative of the State of Illinois, Department of Transportation, testified that at the time Respondent received the lien of Claimant Odum on public funds there was $11,000 remaining on the contract that was not vouchered and that the liens of Claimants J & W Allen and Odum were less than the unvouchered funds on hand. Further, Graham testified that he believed, as Respondent's agent, that the unvouchered funds belonged to the general contractor, Three Star Construction, or its successor in interest, Western Casualty.

Accordingly, Respondent's reliance on *Gunther v. O'Brien, supra,* and its progeny is misplaced. Respondent's argument that "there were no excess funds after the project was completed" and that there were no funds to which a lien could attach when Claimants gave their

section 23 lien notices, must fail. The circuit court of Williamson County found that a valid debt existed between the general contractor, Three Star Construction Company and its subcontractor, J & W Allen; the Williamson County Circuit Court further found that there was a valid debt from J & W Allen Construction to Odum Concrete. Respondent offered no evidence which tended to impugn or dispute the findings of the Williamson County Circuit Court with respect to these matters. Although the burden of proof remains herein upon the Claimants, the evidence adduced through the testimony of Respondent's agent as well as the findings of the Williamson County Circuit Court would at least shift the burden of proceeding to Respondent to show that the claim of Odum through the subcontractor Allen, was limited to the funds due Allen from Three Star in order to bring into play the ruling of *Gunther v. O'Brien.* This Respondent failed to do; accordingly, Respondent's argument that the funds in the hands of Respondent at the time of the filing of Claimants' liens were not lienable must be rejected.

Second, Respondent argues that Claimants' claims must fail for the reason that the general contractor, Three Star Construction Company, who had taken bankruptcy under Chapter 7, should have been joined at the outset of the Williamson County court litigation and was a necessary party and that Claimants failed to exercise diligence in petitioning the Federal bankruptcy court to lift the automatic stay and to commence proceedings against the general contractor, Three Star Construction. Thus, Respondent argues that, having failed to join the necessary party (the general contractor, Three Star Construction Company) within 90 days of the filing of their liens, it obviates any claim that the Claimants may have to a lien. Respondent cites no case

which is directly in point. Claimant cites *Garbe Iron Works Inc. v. Priester* (1982), 110 Ill. App. 3d 948, 443 N.E.2d 204, for the proposition that the time for filing a suit for accounting against the general contractor, Three Star Construction, was tolled. In the *Garbe Iron Works* case, the subcontractor furnished labor and materials under an agreement with the contractor, completing performance on February 2, 1979. On May 2, 1979, plaintiff subcontractor filed a claim for mechanic's lien. Approximately 15 months later, the general contractor filed a petition in bankruptcy under Chapter 11 which automatically stayed proceedings in State courts under the provisions of 11 U.S.C. section 362(a). Approximately 4½ months later, on December 23, 1980, the bankruptcy court entered an order modifying the automatic stay to permit plaintiff, the subcontractor, to file and pursue its suit to attempt foreclosure of a mechanic's lien. Approximately three months later, on March 16, 1981, plaintiff filed a suit to foreclose mechanic's lien. Defendants asserted that since the two-year period for filing suit after completion of performance expired February 2, 1981, plaintiff's suit should be barred as having been filed on March 16, 1981. The First District Appellate Court held that the plaintiff's complaint should not be dismissed for the reason that during the two-year limitation period, the automatic stay had been in effect from August 11, 1980, through December 23, 1980 (133 days) and that during such period the two-year limitation had been tolled. The court pointed out that under section 362(a)(1) of the Bankruptcy Act it "is unequivocally clear that the Petitioner in Bankruptcy is to be protected from all forms of judicial proceedings including the mere 'issuance or employment of process * * *.'" The court concluded:

"We believe Plaintiff had no alternative but to delay filing of suit until the automatic stay was terminated. In our opinion the comparison of a pure statute of limitations to restriction of the time to bring an action by a condition of the right sought to be enforced leads to creation of a distinction without a difference; particularly in the context of the case at bar where we are dealing with a stay of enforcement resulting from the imposition of a binding federal statute."

Accordingly, the appellate court reversed the action of the trial court in dismissing the plaintiff's case to attempt foreclosure of its mechanic's lien.

It is not contested in the case at bar, that at the time the liens of Claimants were filed with Respondent, that Three Star Construction Company was in bankruptcy. Further, Respondent does not argue that Claimants sought and obtained relief from the automatic stay, but only that Claimants were "dilatory" in not joining Three Star at the commencement of the action. Professor Cowan, in his *Bankruptcy Law and Practice* (1986 ed.), vol. 2, sec. 11.7, discusses the automatic stay under section 362. In this 18-page treatment, it is pointed out that relief from an automatic stay may involve many complex and difficult issues particularly where competing liens and the interest of the trustee are at odds. It does not seem that the joinder of Three Star Construction Company shortly after a lifting of the automatic stay and within nine months of the commencement of the suit was such "dilatory" conduct as to deprive Claimants of their right to enforce their lien.

Finally, Respondent argues that Claimants failed to file their suit in an appropriate forum since the public improvement into which the goods, materials and services of Claimants were included was located in Franklin County, Illinois, and the Claimants' suit was commenced in Williamson County, Illinois. Thus, Respondent argues, the Williamson County court lacked "subject matter jurisdiction" to establish a lien against

public funds. Respondent cites no case directly in point. However, Respondent cites *Village of Crainville v. Argonaut Insurance Co.* (E.D. Ill. 1976), 469 F. Supp. 11, which involved a case filed under the Illinois statutes which require that public construction contracts be bonded (Ill. Rev. Stat., ch. 29, pars. 15, 16).

In that case, the subcontractor filed suit in St. Clair County for recovery under the Illinois Bond on Public Works Act, instead of Williamson County where the project was located. The court held that such an action can only be brought in the circuit court where the contract was to be performed. In its opinion, the court pointed out that the legislative intent in passing the Act was to restrict litigation to the circuit court in the county where the work was performed. From this, Respondent argues, that the "policy considerations" for administering competing claims to a single fund in cases on public works bonds applies with equal force to cases under the provisions of the Illinois Mechanics' Liens Act for establishing a lien on public funds. Respondent fails to point out that the statutory provisions pertaining to recovery on construction bond for public works provides *specifically* as follows:

"Such action shall be brought only in the circuit court of this State in the judicial circuit in which the contract is to be performed." (Ill. Rev. Stat. 1987, ch. 29, par. 16.)

Section 23 of the Mechanics' Liens Act contains no such provision. Section 23(c) applies to this case. This section provides only that the lien claimant's complaint "for an accounting" be filed within 90 days after giving notice of lien. No mention is made of the required forum. Respondent asserts that section 9 of the Mechanics' Liens Act under the heading "Suit to Enforce Lien—Joint Suit—Counterclaim—Dismissal—Continuance—Limitation" applies with respect to the "complaint for an

accounting" which is applicable procedure under section 23. Section 9 provides a means to "the contractor having a lien by virtue of this Act" with the mechanism for enforcement. It provides in part, as follows:

"If payment shall not be made to the contractor having a lien by virtue of this Act of any amount when the same becomes due, then such contractor may bring suit to enforce his lien in the circuit court in the county where the improvement is located ° ° °" (Ill. Rev. Stat., ch. 82, par. 9.)

Thus, Respondent argues as follows: "The Act does not merely allow venue in the county where the project is located: it confers *exclusive* subject matter jurisdiction on the circuit court of the County where the project is located." (see Respondent's brief, p. 12). Respondent asserts that there is no reported decision where an action has been commenced under section 23(c) in a county different than that in which the improvement exists; similarly, it should be observed that there is no reported decision holding that the claim of a lien claimant to public funds under section 23(c) should be defeated because his complaint for an accounting is initiated in a county different than that where the project is located. It appears that a major issue in this case exists with respect to whether or not the provisions of section 9, setting forth the mechanism for enforcement of an existing mechanic's lien on private property, is applicable to the complaint for accounting which is required by the section governing liens against public funds.

Illinois courts have held that only section 23 "governs liens on public improvements" and the "other sections of that Act have no application to public lien funds." *Anderson "Safeway" GR Corp. v. Champaign Asphalt Co.* (1971), 131 Ill. App. 2d 924, 929, 266 N.E.2d 414, 418; see also *Alexander Lumber Co. v. Coberg* (1934), 356 Ill. 49, 190 N.E. 99.

In the *Anderson "Safeway"* case, *supra*, a material

supplier, having provided material to a subcontractor of the general contractor on a highway project, filed a complaint for accounting under section 23 of the Mechanics' Liens Act. The general contractor filed a motion for summary judgment on the ground that it had paid its subcontractor in full, to whom the lien claimant had supplied materials. The motion for summary judgment contended that the lien of a material supplier to a subcontractor under section 23 against public money due or to become due a general contractor is limited to the amount owed by the general contractor to the subcontractor at the time the notice of lien was filed. The motion for summary judgment was granted by the trial court. The lien claimant's complaint for an accounting did not allege that at the time the materials suppliers' notice of lien was served on the State that there was any money owed by the general contractor to the subcontractor for whom the materials were supplied.

One of the arguments made by the lien claimant on appeal was that sections 4, 21, 22, and 27 of the Mechanics' Liens Act required the general contractor to obtain evidence from his subcontractor that the sub-contractor had paid its material suppliers prior to the payment from the general contractor to the subcontractor; or that in lieu thereof, the general contractor should have obtained a statement under oath regarding identity of the materials suppliers and the amounts due each. The lien claimant argued on appeal that a failure of the general contractor to follow these steps, under the quoted sections of the Mechanics' Liens Act, constituted a wrongful payment by it to its subcontractor for which it would not have been entitled to credit. In responding to this argument, the Fourth District Appellate Court replied as follows:

"These contentions are to be wholly rejected, as the language of Section 23 of the Mechanics Lien Act (Ill.Rev.St. 1969, Ch.82, Sec.23) is clear that only that Section of the Act governs liens on public improvements. The other sections of that Act have no application to public fund liens. *Alexander Lumber Co. vs. Coberg*, 356 Ill. 49, 190 N.E. 99 (1934)."

The only occasion that the Illinois Supreme Court has had to consider this matter is represented by the case of *Alexander Lumber Co. v. Coberg, supra.* In that case the supreme court was called upon to construe section 23 of the Mechanics' Liens Act in connection with the claim of a materialman furnishing material to a subcontractor. The case was decided before section 23 was amended to permit such claims. The court observed as follows:

"Section 23 only has to do with the establishment of liens upon specific funds of municipalities. The other sections of the Mechanics Lien Act do not deal with municipalities and liens upon their funds, consequently there is an absence of relationship between Section 23 and the rest of the Act (*Alexander Lumber Co. vs. Farmer City*, 272, Ill. 264).

Invoking the cited rules of construction, this Court has held that Section 23 affects the contractor who owes money to the person furnishing materials, and that the lien given by Section 23 is solely against the funds due from the municipality to the contractor (*Standard Oil Co. vs. Vanderboom*, 326 Ill. 418; *McMillan vs. Casey Company*, 311 id. 584; *Alexander Lumber Co. vs. Farmer City*, supra). Other sections of the Act having to do with remedies for the enforcement of liens do not apply to a lien created by Section 23. *National Bank vs. Petterson*, 200 Ill. 215."

The court went on to hold that the Act in effect at the time that decision was rendered did not extend to materialmen who furnished materials to a subcontractor and recited that the language used by the legislature was such that it applied only to contractors and persons furnishing material, apparatus, fixtures, machinery or labor to any contractor having a contract for public improvement.

Respondent would have us read into section 23 the requirement that the complaint for accounting be filed only in the county where the public project is located. As stated by the Illinois Supreme Court in *Alexander Lumber Co. v. Coberg, supra*, "the language used by the

legislature is plain, specific and not all-inclusive. Under the authorities cited, and the well-known rule that the expression of one thing is the exclusion of all others, this Court has no right to read into this Section words not found therein." (356 Ill. 49, 55).

Scholarly commentators on the Illinois Public Mechanics' Lien statute have commented about the care required in distinguishing between a lien on public funds and the other provisions of the Mechanics' Liens Act. In an article by G.A. Finch entitled "A Primer on Illinois Public Mechanics Liens," *Illinois Bar Journal*, vol. 75, no. 9, 500, the author stated:

"The claimant must remember not to confuse the provisions for mechanics lien claims on private improvements with those for public improvements. The failure to note and remember these differences will increase the likelihood of failure to recover under the statute."

With respect to the question of what provisions of the statute are applicable to the section 23 public funds lien, the author states as follows:

"The liberal construction provision of Section 39 (of the Act) applies to provisions relating to private mechanics liens but probably does not extend to Section 23. Illinois Courts have held that only Section 23 'governs liens on public improvements (and the) other sections of that Act have no application to public lien funds.'

Nevertheless, two early Illinois Decisions held that the Public Lien Act is a remedial statute meant to provide a remedy for sub-contractors and materialmen who, in good faith, perform labor or furnish materials and that the statute should be liberally construed. The 1980 Decision in *Davenroy Plumbing and Heating vs. Earnest Inc.* 87 Ill. App.3rd 1047, 409 N.E.2d 372 (1980), suggests that substantial compliance might be sufficient, although the Court held that the Plaintiff had not substantially complied.

Some Courts appear to have followed a strict construction approach in requiring adherence to the procedural requirements of Section 23 in order to perfect a lien. In *Wagoner Equipment Rental and Excavating Co. vs. Johnson*, 33 Ill.App.3rd. 358, 363 (rehearing denied), 342 N.E.2d 266, 270 (1975), the Court held that 'in view of the failure of Plaintiff to follow procedure in Section 23 no duty devolves upon the officials charged. . .'

Thus the law on whether the procedural requirement must only be substantially complied with or strictly followed is unsettled. 'The lien claimant would do well to exercise caution and strictly comply with the provisions of the Statute.' "

A strict and literal compliance with the stated provisions of section 23 dealing with public funds liens does not permit the inference that any requirement exists that the complaint for accounting must be filed in the county wherein the public project is located. To read such a requirement into section 23 when the plain, strict, literal interpretation of the provisions of section 23 does not so provide, would do substantial violence to the rules of construction applicable to the Mechanics' Liens Act.

Therefore, the position of Respondent that Claimants' claim must fail due to the fact that they filed their complaint for an accounting in Williamson County instead of Franklin County, where the public project was located, must be rejected.

## CONCLUSION

The funds remaining unvouchered in the hands of the Illinois Department of Transportation at the time Claimants' claims for lien and complaints for accounting were filed were lienable funds; Respondent made no attempt to show that the subcontractor to whom Claimants provided materials and supplies had been fully paid. Indeed, the evidence supports the conclusion that J & W Allen had not been paid; and further, that the unvouchered sums in the hands of the Department of Transportation were sufficient to cover Claimants' liens.

Claimants were not bound to join the general contractor, Three Star Construction, when their complaints for accounting were filed in the Williamson County Circuit Court for the reason that Federal law mandated the stay of all proceedings against Three Star Construction, which included any proceedings upon which process would be required to issue. Upon the lifting of the automatic stay, Claimants joined Three Star

Construction in the complaint for an accounting with due diligence.

There is no requirement that Claimants file their complaint for an accounting under section 23 in the county where the public project was located.

Accordingly, the Williamson County Circuit Court had jurisdiction of the parties and the subject matter at the time of the entry of the Williamson County order of August 20, 1985.

Accordingly, Respondent should not have paid over the funds retained to Three Star Construction or its successor in interest when it did so on April 3, 1985. It was the duty of Respondent under section 23(c) of the Mechanics' Liens Act (Ill. Rev. Stat., ch. 82, par. 23(c)) "to withhold payment of a sum sufficient to pay the amount of such claim" until the final adjudication of the suit of Claimants. The failure on the part of Respondent to perform the obligations of Respondent under the statute damaged the plaintiffs in the sum of $6,518.50.

It is therefore ordered, adjudged and decreed that the Claimants be awarded the sum of $6,518.50 in full settlement of this claim.